## OUTWATER vs. DODGE and GREEN.

A *delivery* of goods by the vendor, and an *acceptance* by the *agent of the vendee*, is sufficient to take a contract out of the operation of the statute of frauds, where there is no earnest paid, and no note or memorandum in writing.

A person owning a part of a cargo of a vessel, standing by and permitting another who owns the residue to sell the same, agreeing to look to such other for payment, and subsequently being paid for the same, is a competent witness to prove the contract of sale.

THIS was an action of assumpsit, tried at the Dutchess circuit, in December, 1828, before the Hon. JAMES EMOTT, then one of the circuit judges.

The declaration contained several counts: 1. A count in *indebitatis assumpsit* for 500 barrels of herring, *sold and delivered*; 2. For a like quantity of fish, *bargained and sold*; 3. A *quantum valebant* for the fish, as sold and delivered; 4. A *quantum valebant* for the fish, as bargained and sold; and 5. Setting forth a special contract, by which the defendants bargained for and bought, and the plaintiff sold all the herring that would pass *inspection*, without regard to wantage, i. e. deficiency in weight, in a large lot of herring, to wit, 360 barrels, belonging to the plaintiff, at the price of nineteen shillings for each and every barrel that passed inspection, to be delivered to the defendants, on Hicks' wharf in Brooklyn, as soon after making the contract as should be convenient, and to be paid for by the defendants on delivery; the inspection to be at the defendants' expense. The plaintiff averred that on the day after the making of the contract, he *delivered* on Hicks' wharf at Brooklyn 279 barrels of herring, the same having passed inspection, and was ready and willing, and tendered and offered to deliver the same to the defendants, and requested them to accept and pay for the same. The breach assigned is that the defendants did accept of and receive the delivery of 250 barrels of the herring, but refused to accept the remaining 29 barrels, and refused to pay for any part of the herring. The declaration also contained the money counts and an *insimul computassent*.

The defendants pleaded the general issue, and gave notice that they would prove, on the trial, a total failure of performance by the plhintiff of his part of the contract.

It appeared in evidence, that in the latter part of Jnne, 1825, the plaintiff had a cargo of herring on board a sloop in the port of New-York. Green, one of the defendants, came on board and asked the price of the fish. The plaintiff agreed to take nineteen shillings per barrel. Green said he would send Watrous, an inspector, on board, and if they were good fish, he would take them. Watrous came on board and examined the fish; ascertained its quality, and estimated the wantage to be three barrels to the hundred. Afterwards, in the course of the same day, Green said he would pay nineteen shillings for what should bear inspection; that if he must send lighters along side of the sloop in which the fish were, and take the delivery from the sloop, the plaintiff should make up the wantage in the barrels which were not full; but that if the plaintiff would deliver the fish to the defendants on Hicks' wharf at Brooklyn, then the defendants would take all the fish that would bear inspection, at nineteen shillings per barrel, as they were, without any regard to wantage; and that the plaintiff might consider of it until evening, before he made his election. Green said he would engage Mr. Hicks to receive the fish upon his dock for inspection, and after inspection, to store it for the defendants. In the evening of the same day, the plaintiff gave notice to Green that he would deliver the fish at Brooklyn; and Green agreed to send Watrous over the next forenoon to inspect it. On the next day the plaintiff proceeded with the fish to Brooklyn; Hicks directed where the fish should be deposited on the wharf, and opened for inspection; and gave orders to his hands to put them into his store as fast as they were inspected. 50 barrels were inspected on the same day by Watrous, or persons in his employ, and put into the store of Hicks; and on the next day upwards of 200 barrels more were inspected, and put into the same store. There were 360 barrels in the whole, of which number 81 barrels did not pass inspection, leaving 279 barrels, the number for which payment was demanded in the special count. Previous to the

fish being removed from New-York to Brooklyn, seven barrels had been taken to the store of the defendants, and returned to the sloop, the fish in those barrels being spoiled ; but after they were thus returned to the vessel, an explanation was made to Green in respect to those seven barrels, and he still agreed that the contract should proceed. Upon this evidence the plaintiff rested, and the defendant moved for a nonsuit, on the ground that the evidence was not sufficient to take the case out of the operation of the statute of frauds. The judge refused the nonsuit. The defendants then examined witnesses to prove a recission of the contract on their part previous to performance on the part of the plaintiff; and also that the fish, at the time of the contract, were in a damaged condition, and shortly thereafter became wholly worthless ; to rebut which, testimony was given on the part of the plaintiff. The jury, under the charge of the judge, found a verdict for the plaintiff for $523,46.

On the trial of the cause, a question arose as to the competency of one of the witnesses called by the plaintiff to prove the contract. He was examined on his *voire dire,* and testified that 256 of the 360 barrels of fish belonged to him when the vessel arrived in New-York ; that he permitted the plaintiff to sell the 256 barrels as the property of the plaintiff, he looking to the plaintiff alone for payment. That since the sale to the defendants, the plaintiff had accounted to him for the 256 barrels at the rate of nineteen shillings per barrel, although he, the witness, had originally asked twenty shillings per barrel ; that the plaintiff had given him a draft upon a mercantile firm for $200, which had been duly paid, and had credited him the residue on account of demands which the plaintiff held against him ; and that he had no interest whatever in the event of the suit. After this examination he was admitted a competent witness, and sworn in chief. The defendants moved for a new trial.

*D. Selden,* for defendants.

*S. P. Staples,* for plaintiff.

*By the Court,* SUTHERLAND, J.   The special contract was proved substantially, as laid in the declaration.   The contract, however, was not reduced to writing when it was made, nor was any part of the consideration money paid; it was therefore void, under the fifteenth section of the *statute of frauds,* 1 *R. L.* 79, unless the fish contracted to be sold, or a part thereof was actually delivered by the plaintiff, and accepted by the defendants, under the contract.   Whether there was such a delivery and acceptance, is therefore the first and most material enquiry in this case.   (Here the judge went into a full examination of the evidence, and then proceeded:)   The evidence establishes the *delivery* by the plaintiff, but the question as to the acceptance by the defendants is not free from difficulty.   Delivery merely, without acceptance, does not take the case out of the statute, so as to make the contract binding upon the vendees; and even where there has been an actual receipt and handling of the goods, a vendee may, nevertheless, under certain circumstances, return them and renounce the bargain, if no earnest has been paid, or note, or memorandum in writing, made.   This was expressly adjudged in *Kent* v. *Hutchinson, 3 Bos. & Pul.* 233. The defendant in that case was a retail dealer in sponge, residing in Staffordshire.   The plaintiff was wholesale dealer in that article, residing in London; and had received from the defendant a verbal order for a quantity of sponge.   It was soon after sent, and the price charged was eleven shillings per pound.   The defendant returned the sponge to the plaintiff, objecting to the quality and price.   It appeared that the bale had been opened and examined by him and his friends; and it was contended by the plaintiff that this was a sufficient acceptance to take the case out of the statute, and bind the bargain; that the defendant's conduct affirmed the order previously given, and only denied that the order was well complied with, which was a matter for the consideration of the jury.   Lord Alvanley, however, before whom the cause was tried, nonsuited the plaintiff, and the court of common pleas refused to set the nonsuit aside.   They held that the exception in the statute did not apply, unless the vendee both received and accepted; and that such acceptance must be

an ultimate acceptance, and such as completely affirms the contract; and it was observed that it did not appear what the nature of the contract between the parties was ; what quantity of sponge had been ordered ; that the case was left in that state of uncertainty which the statute had in contemplation, and meant to guard against.

It is not indispensable, however, that there should, in all cases, be an actual manual delivery and acceptance. A virtual delivery and acceptance may, in some instances, be equally effectual. They may be presumed or inferred from circumstances. *Roberts on Frauds*, 174 *to* 184. Thus, if the articles are ponderous, and not easily susceptible of actual delivery, and the vendee proceeds to exercise a right of ownership over them, by disposing of them, or giving orders and directions respecting them, this will justify a jury in finding a delivery and acceptance. *Chapin* v. *Rogers*, 1 *East*, 192. The case of *Searle* v. *Reeves*, 2 *Esp. N. P. Cas.* 598, is also a strong case to the same point. Vide also *Bailey & Bogert* v. *Ogden*, 3 *Johns. R.* 420 ; 11 *id.* 283 ; 10 *id.* 364.

Where a written order for goods is given, so as to take the case out of the statute, and the purchaser directs them to be sent *by a particular carrier*, the title vests in the vendee immediately upon the delivery to the carrier, and he is responsible to the vendee, though the goods be lost by the carrier, and never actually come to his possession ; *Vale* v. *Bayle*, *Cowp.* 294 ; 8 *T. R.* 330 ; 5 *Burr.* 2580 ; 1 *T. R.* 659 ; and it was held by the court of common pleas, in *Dalton* v. *Solomonson*, 3 *Bos. & Pul.* 582, that though the vendee do not name any particular carrier, but directs the goods to be sent by a carrier, the moment the goods are delivered to the carrier, it operates as a delivery to the purchaser, and the whole property immediately vests in him. Lord Alvanley, Ch. J. expressed a very strong opinion upon this point. Mr. *Roberts*, in his *Treatise upon the Statute of Frauds*, 180, considers the foregoing cases as justifying the inference, that where goods are delivered upon a *verbal* order, the delivery to the carrier would be such an execution of the agreement, on the part of the vendor, as to preclude him from taking ad-

vantage of the statute of frauds to reclaim the goods; but that the vendee might still refuse to execute the parol agreement; that he might open and examine the goods, and after examination, return them. The latter part of this proposition is fully established by the case of *Kent* v. *Hutchinson*, already referred to, *3 Bos. & Pul.* 232. Where the verbal order, however, is particular, both as to the goods and the carrier, he remarks, that it seems to furnish a plausible ground for contending that such selection of the goods, and designation of the receiver, may amount to an acceptance, with which the actual delivery, though posterior in point of time, might be coupled by relation, so as to put the whole transaction out of the operation of the statute; but where the order is general, not designating any particular goods, but merely directing goods of such a price and quality to be sent, he holds that the case will not be taken out of the statute by proof that goods of the quality and price ordered were sent, there being in the latter case nothing to show the acceptence, independent of the proof of the parol contract; whereas, when the goods are fixed upon, and the carrier named by the buyer, the contract is established upon the evidence of the acts of the vendee.

The acceptance need not be by the vendee in person; it may be by his agent, acting under either a general or special authority. The defendants in this case certainly never actually themselves accepted the fish in question. If there was an acceptance, it was by Watrous and Hicks, or one of them; and the important inquiry upon the trial must have been, whether they were the authorized agents of the defendants for that purpose. This, under the circumstances of this case, was a mere question of fact; for we must presume the jury were properly instructed by the court, as the charge is not complained of. If Hicks was directed by the defendants, through Watrous or any other agent, to receive the fish as fast as they were inspected, and store them for the defendants, then he was their authorized agent for that purpose, and his acceptance is binding upon them. The evidence in the case perhaps will warrant such a conclusion; at all

events, such was the opinion of the jury, and it is not so clearly erroneous as to justify us in setting aside the verdict.

Marshall was properly admitted as a witness; he had no interest in the event of the suit. He testifies that he express- ly authorized the plaintiff to sell the 256 barrels of fish be- longing to him, the witness, as the property of the plaintiff; the witness looking to the plaintiff alone for payment. He was also present when the contract was made, and is the principal witness. His acts estop him forever from denying the right of the plaintiff to sell, and the action was properly brought in the name of the plaintiff.

The evidence is contradictory as to the condition of the fish at the time of their delivery. Several witnesses, who saw the fish at that time, and assisted in the inspection, testified that a large portion of them appeared to be uncommonly fine, and in good order. It is shown, however, that a few weeks afterwards they were utterly worthless. They appear to have been properly sheltered, and their rapid decay is not satis- factorily accounted for by the evidence in the case. Wheth- er it was owing to an original, but latent defect, which went to the foundation of the contract, and avoided it on the ground of fraud or failure of consideration, or whether it was occa- sioned by subsequent circumstances, were questions pecu- liarly proper for the determination of the jury; and as it is conceded that they were not misdirected, we ought not to interfere with the verdict on this ground.

Motion for new trial denied.