## GLEN and HALL vs. WHITAKER.

A delivery by a vendor, to a specified carrier, of the goods purchased, in pursuance of the verbal order and direction of the purchaser, is in law, a delivery to the latter, and *ipso facto* an acceptance by him of the property.

The parties made a parol agreement at Rochester, for the sale and delivery by the plaintiffs to the defendant of a clover machine, of the value of $375. At the time when the agreement was made, a machine of the value and description of the one mentioned therein was completed, and pointed out to the defendant, who directed the plaintiffs to ship said machine by the New York Central Railroad to S. at Penn Yan. The machine was so shipped, and received by S. and was retained by him with the knowledge of the defendant, and was not returned to the plaintiffs. *Held*, that these facts were conclusive, and sustained the conclusion of the referee that as between the vendors and vendee, the latter accepted the property.

*Held, also*, that the rights of the parties were fixed by the delivery of the machine to the carrier, pursuant to the directions of the defendant, and that the title thereby passed to him. And that a letter, subsequently written by the defendant, repudiating the agreement and countermanding the order for the machine, was ineffectual as a countermand.

That in the absence of fraud, or of evidence showing that the machine was not the same he selected, or that it was not in as good condition at the time of delivery, as it was at the time of selection, the purchaser had no right to return it, after it was delivered to the carrier. That the case was the same, in that respect, as if the delivery had been to himself personally.

---

Glen *v.* Whitaker.

---

APPEAL from a judgment entered upon the report of a referee.

The action was brought to obtain the specific performance by the defendant of a parol agreement made by him with the plaintiffs, at Rochester, N. Y. on the 16th day of January, 1867, for the conveyance by the defendant to the plaintiffs, of a shop right under a patent for an improved clover machine. The defendant took issue upon the consideration of this agreement, which is the principal issue in the case. The action was referred, and tried before a referee in December, 1867. On the trial it appeared that the defendant and the plaintiffs, at the plaintiffs' machine shop in Rochester, on the 16th of January, 1867, made an agreement by parol, that the plaintiffs should sell to the defendant, and deliver to one Shattuck, at Penn Yan, a clover machine which the plaintiffs then had previously made for said Shattuck, and the defendant in payment therefor should convey to the plaintiffs the shop right above mentioned. That during the conversation in which this agreement was made, the defendant told the plaintiffs to ship such clover machine to said Shattuck at Penn Yan, by the New York Central Railroad. It was also proved that such machine was delivered by the plaintiffs to the agent of said railroad company at Rochester, on the 19th day of January, 1867. That such machine did not arrive at Penn Yan until the 26th day of the same month. That on the 17th day of January aforesaid, the defendant at Penn Yan being dissatisfied, wrote a letter designed for the plaintiffs, repudiating said agreement, and countermanding any order for the machine, which letter came to the plaintiffs' hands on the 23d of same month, and on the 19th of same month, the defendant notified said Shattuck of such countermand, and that he would have nothing to do with the agreement. That Shattuck, notwithstanding, took the machine and kept it, storing it for a time in the Commercial Iron Works, owned in part by the defendant,

and on the 7th of March following the plaintiffs tendered to the defendant a conveyance of such shop right under said patent, for execution by the defendant, which he refused to execute.

The referee found as conclusions of law:

*First.* That the unconditional delivery to the railroad company of the machine, in pursuance of the order and direction of the defendant, was a delivery in law to him, and *ipso facto* an acceptance by him of the property.

*Second.* That the countermand of his order, after it had been complied with by the plaintiffs, and after an act done which placed the machine in the hands of the agents of the defendant, and beyond the control of the plaintiffs, was a nullity.

*Third.* That the agreement, although by parol, being performed by the plaintiffs, as directed by the defendant, the plaintiffs were entitled to have it specifically performed by the defendant.

He accordingly directed a judgment to be entered in favor of the plaintiffs, with costs. From which judgment the defendant appealed.

*Charles G. Judd,* for the appellant. I. The agreement by parol sought to be enforced, was executory, for the sale of personal property of the value of over $50, and before it was executed by either party was revoked by the defendant. 1. The defendant's letter dated January 18, 1857, was received by the plaintiffs January 23, and before the machine was delivered by the railroad company to Shattuck, on the 28th of the same month. This was a countermand of the defendant's order, and a repudiation of the whole agreement. 2. This revocation was before the performance of the agreement by the plaintiffs, for they were to ship the machine to Shattuck at Penn Yan. The delivery to Shattuck could not be completed until it reached him at Penn Yan. 3. At

all events, the defendant's revocation was received by the plaintiffs before the defendant in any way accepted the delivery of the machine, which was sufficient to annul the agreement.

II. The referee erred in his finding of fact that the machine was received by Shattuck on or before the 25th of January, 1867. The only proof on the point is by Whitaker. That it was not received by Shattuck until the 28th of January.

The referee erred in finding that " *after* the contract between the parties was completed, the defendant directed the plaintiffs to ship said machine by the Central Railroad, to Shattuck, at Penn Yan, *in the usual manner*, and *subject* to the orders of said Shattuck." The only proof on this point is that showing clearly that the direction to ship was given only at the time of making the agreement, and as a part of it; and no other direction was given as to the manner of shipping, except to send by the Central railroad, and nothing about shipping subject to the order of Shattuck; the direction being to " *send the machine down to Penn Yan, and deliver it to Shattuck.*"

IV. The referee erred in finding " that the unconditional delivery to the railroad company of this machine, in pursuance of the order and direction of the defendant, was a delivery in law to him, and *ipso facto* an acceptance by him of the property." 1. The delivery was not complete for the reasons before stated. 2. The defendant did no *act* up to this time, nor afterwards, indicating an acceptance by him of the delivery. To constitute such acceptance of the property, it must be by some *act*, something done positive and certain, indicating it beyond words merely—acts done *under* the contract, and while that remains unrevoked, as evidence of a purpose to *accept the ownership* of the property, and these acts are to be concurred in by *both* parties. (2 *Sandf.* 157. *Good* v. *Curtiss*, 31 *How.* 4, 11. 6 *Wend.* 401. *Brabin* v. *Hyde*, 32 *N. Y.*

*Rep.* 519, 522. *Shindler* v. *Houston,* 1 *id.* 261. *Sprague* v. *Blake,* 20 *Wend.* 61. *McKnight* v. *Dunlop,* 5 *N. Y. Rep.* 537, 544.) 3. There is no evidence that the delivery to the railroad company was " unconditional."

V. The referee erred in deciding that the railroad company were the defendant's agents. Testimony on this point is referred to under third point above. Neither was Shattuck such agent after the notice given to him by the defendant on the 19th of January, above referred to. Shattuck, in taking the machine and keeping it as he did on his own responsibility, after such notice to him, and after the total repudiation by the defendant of the agreement on the 23d of January, in his letter to the plaintiffs, could not be held to be acting as the defendant's agent, but for himself only. The proof clearly shows that the defendant never, in any way or manner, intermeddled with the machine, or derived any benefit from it.

VI. But it is said that if the repudiation of the machine by the defendant was effectual, it would work some inconvenience to the plaintiffs. And for this reason it may be fair to infer that the learned referee was disposed to aid the plaintiffs, by his decision in the case. If these consequences of inconvenience, or even of loss, had occurred to the plaintiffs for that cause, they would have no cause to complain, for the reason that they knew at the time, or are presumed to have known, that they were acting upon an imperfect agreement, which was liable to be revoked and repudiated by the defendant. The risk of this they voluntarily assumed. On the other hand, however, the defendant ought not to suffer, for he promptly and fully notified the plaintiffs of this revocation, and had not his letter been delayed by the accidental misdirection, it would have reached the plaintiffs, by the ordinary course of the mail, before the machine was delivered at the depot. Again, the plaintiffs would not suffer any loss in the case supposed, since Shattuck is good and responsible for the value

Glen *ð.* Whitaker.

of the machine, and for aught that appears, would have paid for it if requested.

*H. Humphrey*, for the respondents. I. The testimony sustains the case made by the complaint, and the facts found by the referee.

II. The direction by the defendant, *after having seen the machine*, to ship it by rail to Shattuck at Penn Yan, and the shipment of the same on the 19th of January, 1867, were a delivery and acceptance, which took the case out of the statute of frauds. (*People* v. *Haynes*, 14 *Wend.* 546. *Grosvenor* v. *Phillips*, 2 *Hill*, 147. *Dyer* v. *Forrest*, 2 *Abb. Pr.* 82. *Ryan* v. *Dox*, 34 *N. Y. Rep.* 311–313. *Outwater* v. *Dodge*, 6 *Wend.* 397.)

III. The letter claimed to have been a countermand, having been directed to F. W. Glen, then residing in Canada, and not having come to the plaintiffs' hands, until January 23, four days after the machine had been shipped, was, as a countermand, a nullity.

IV. The defendant having received the machine into his warehouse, and suffered Shattuck to take it away, and use it as his own, this was an affirmance of the contract, a retraction of his countermand, and estops him to set up the statute of frauds.

V. The performance of contracts like this, where damages are uncertain, will be specifically decreed in equity. (*Story's Eq. Jur.* 715–726.)

*By the Court*, JAMES C. SMITH, J. The principal question in this case, is whether the delivery by the plaintiffs to the rail road company, of the machine in controversy, in pursuance of the order and direction of the defendant, was, in law, a delivery to him, and *ipso facto* an acceptance by him of the property, as decided by the referee.

The referee found as facts, that the parties made an agreement, without writing, for the sale and delivery by

the plaintiffs to the defendant, of a clover machine of the value of $375; that at the time when the agreement was made, a machine of the value and description of the one mentioned in the agreement was completed and · pointed out to the defendant and examined by Shattuck, to whom the defendant directed the plaintiffs to ship said ·machine by railroad; and that the machine was so shipped and received by Shattuck, in due course, and was retained by him with the knowledge of the defendant, and has not been returned to the plaintiffs.

These findings are supported, either by testimony which is uncontradicted, or by conflicting testimony which would warrant a finding either way, and they are, therefore, conclusive. And they fully sustain the conclusion of the referee, that as between the vendors and vendee, the latter accepted the property.

It was long ago decided in England, that where a *written* order for goods is given, so as to take the case out of the statute, and the purchaser directs them to be sent by *a particular* carrier, the title vests in the vendee immediately upon the delivery to the carrier, and he is responsible to the vendee, though the goods be lost by the carrier, and never actually come to his possession. (*Vale* v. *Bayle, Cowp.* 294.) Again, it was held that though the vendee do not name any particular carrier, but directs the goods to be sent by a carrier, the moment the goods are delivered to the carrier, it ·operates as a delivery to the purchaser, and the whole property immediately vests in him. (*Dutton* v. *Solomonson,* 3 *Bos. & Pul.* 582.) These cases, (as was remarked by Sutherland, J. in *Outwater* v. *Dodge,* (6 *Wend.* 401,) have been considered as justifying the inference that where goods are delivered upon a *verbal* order, the delivery to the carrier would be such an execution of the agreement on the part of the vendor, as to preclude him from taking advantage of the statute of frauds to reclaim the goods; but that the vendee might still refuse to execute

the parol agreement; that he might open and examine the goods, and after examination, return them. Where the verbal order, however, is particular, both as to the goods and the carrier, it has been regarded as furnishing a plausible ground for contending that such selection of the goods, and designation of the receiver, may amount to an acceptance, with which the actual delivery, though posterior in point of time, might be coupled by relation, so as to put the whole transaction out of the operation of the statute. The goods being fixed upon by the buyer, and the carrier named by him, the contract is established upon the evidence of the acts of the vendee. (*See Roberts on Frauds,* 180.) These views as to what acts of the vendee constitute an acceptance, seem to have received the sanction of judicial authority in the case of *The People* v. *Haynes,* (14 *Wend.* 546.) In that case the court for the correction of errors, reversing the Supreme Court, held that where a purchase of merchandise is made, the goods *selected by the purchaser,* put in a box and the name of the purchaser and his place of residence marked thereon, and the box containing the goods sent by the vendor and put on board a steamboat *designated by the purchaser,* to be forwarded to his residence, the sale is complete, and the goods become the property of the purchaser. In that case, it is true, the vendee and not the seller, insisted that the title passed by the delivery to the carrier, but the transaction was complete, as to the purchaser as well as the seller, he having previously selected the goods.

In the present case, we think it clear that the rights of the parties were fixed by the delivery of the machine to the carrier pursuant to the directions of the defendant, and that the title thereby passed to him. His letter, subsequently written, was ineffectual as a countermand. In the absence of fraud, or of evidence showing that the machine was not the same he selected, or that it was not in as good condition at the time of delivery, as it was

at the time of selection, he had no right to return it after it was delivered to the carrier. The case is the same, in that respect, as if the delivery had been to himself, personally.

These views lead to an affirmance of the judgment.

Judgment affirmed.