WILLIAM S. CROSS and RICHARD K. CROSS, Respondents, *v.* NEAL O'DONNELL and HUGH O'DONNELL, Appellants.

To take a contract for the sale of personal property out of the statute of frauds, by delivery, the buyer must both accept and receive the property, although it is not necessary that the accepting and receiving occur at the same time.

After acceptance of goods, delivery by the vendor to a carrier designated by the purchaser will answer the requirements of the statute. The carrier designated by the purchaser can bind him, as his agent, by receiving.

44   661
170 ²152

(Argued May 8th; decided September 13th, 1871.

APPEAL from an order of the General Term of the New York Court of Common Pleas, affirming a judgment entered upon a verdict in favor of the plaintiffs.

This action was brought to recover the price of certain hoops, which the plaintiffs claim to have sold to the defendants, at Baltimore in 1863.

The plaintiffs were a firm doing business in Baltimore, and the defendants were a firm doing business in New York. In the fall of 1863, one of the defendants came to plaintiffs' yard in Baltimore, where the plaintiffs had 24,000 barrel hoops, and looked at them and entered into negotiation with plaintiffs to buy them. The plaintiffs asked him $12.00 per 1,000, if they delivered them at a vessel, ready to be transported to New York; or $11.50, if delivered in their yard. The defendant said he would take the hoops, if he could buy them and have them transported to New York, so that, including freight, they would not cost him more than $14.00 per 1,000. One of the plaintiffs then went to the clerk of the steamer "Curlew," to learn what the freight would be per 1,000 to New York, and the clerk finally agreed to carry them to New York for the defendants for $2.50 per 1,000, and in order to bring the price to the defendants at $14.00 per 1,000 in New York, the plaintiffs agreed to deliver them at the steamer for $11.50 per 1,000. And the sale was thus concluded. The plaintiffs then delivered to that steamer the 24,000 hoops, and took an ordinary bill of lading showing the delivery, and consigning the hoops to the defendants at New York, they to pay the freight. The steamer started upon her voyage and was sunk in the Chesapeake bay, and her cargo was lost. The defendants refused to pay for the hoops. This action was thereafter commenced in the New York Common Pleas, to recover the purchase-price. And upon the trial before the court and jury, there was evidence tending to establish the foregoing facts, and the jury rendered a verdict in favor of the plaintiffs. The judgment having been affirmed at General Term, the defendants appealed to this court.

*George W. Stevens,* for the appellant, insisted, among other things, that the goods were not, nor was any part thereof,

delivered to the appellants. (*Shindler* v. *Houston*, 1 Com.,
261; *Bailey* v. *Ogden*, 3 J. R., 399, 421.) There was no
acceptance and receipt by the appellants of the goods or any
part·thereof. A receipt and acceptance is not valid or bind-
ing so long as the buyer has the privilege of returning the
goods as objectionable as to quantity or quality. (*Hanson*
v. *Armitage*, 5 Barn. & Ald., 557; *Howe* v. *Palmer*, 3 Barn.
& Ald., 321; *Acebal* v. *Levi*, 10 Bing, 376; *Nicholle* v.
*Plume*, 1 Carr. & P., 272; *Norman* v. *Phillips*, 14 Mees.
& Wels., 277; *Bushel* v. *Wheeler*, 15 Adol. & Ell. N. S.,
442 N.; *Smith* v. *Surnam*, 9 Barn. & Cres., 561; *Coats* v.
*Chaplin*, 3 Adol. & Ell. N. S., 483; *Jordan* v. *Norton*, 4
Mees. & Wels., 155; *Outwater* v. *Dodge*, 6 Wend., 400;
*Lloyd* v. *Wright*, 25 Georgia R., 215; *Spencer* v. *Hale*, 30
Verm. R., 314; *Maxwell* v. *Brown*, 39 Maine R., 98; *Shep-
herd* v. *Pressy*, 32 N. H. R., 49; *Cooms* v. *Bristol & Exeter
R. R. Co.*, 3 Hurl. & Norm., 510; *Hunt* v. *Hatch*, 8 W. H.
& G., 814.) The buyer may designate an agent, to see the
goods properly delivered, without giving the agent power to
bind him by an acceptance and receipt. (*Astley* v. *Emery*, 4
M. & Selw., 262; *Howe* v. *Palmer*, 3 Barn. & Ald., 321.)
Delivery of the goods to a carrier designated by the buyer
will not operate as an acceptance and receipt by the buyer,
where the carrier has only authority to transport the goods.
(*Hunt* v. *Hatch*, *supra*; *Meredith* v. *Meigh*, 2 Ell. & Bl.,
364; *Frostburgh Co.* v. *N. E. Glass Co.*, 9 Cush., 117;
*Rogers* v. *Phillips*, 41 N. Y. R., 519.)

*Alexander and Green*, for the respondents, cited *Outwater*
v. *Dodge* (6 Wend., 397); *Dutton* v. *Solomonson* (3 Bos. &
Pul., 582); *People* v. *Haynes* (14 Wend., 546); *McKnight*
v. *Dunlop* (5 N. Y. R., 537); *Spencer* v. *Hale* (30 Vt., 314);
*Glen* v. *Whitaker* (51 Barb., 451); *Richardson* v. *Dunn* (1
G. & D., 417); 2 Q. B., 218; *Bushell* v. *Wheeler* (15 Q. B.,
443); 8 Jur., 532; *Carrie* v. *Anderson* (2 El. & El., 592);
6 Jur. N. S., 442.

EARL, C.   On the trial, after proving that the statute of frauds in force in Maryland was substantially like our own, the defendants moved that the plaintiff be nonsuited, on the ground that the contract of sale was void by that statute, and the court denied the motion; and this ruling raises the only question for our consideration in this case.

There was no note or memorandum of the contract, and no part of the purchase-money was paid by the buyers; and, hence, unless the buyers accepted and received the hoops, within the meaning of the statute, the contract was void.   A purchaser may accept without receiving, and he may receive without accepting; and, in order to comply with the statute of frauds, he must both accept and receive.   Here the defendants accepted the hoops.   One of them saw them in plaintiffs' yard; and the contract had reference to this particular lot of hoops which the plaintiffs finally delivered. There is nothing in the statute which requires that the accepting and receiving shall be at the same time.   Either may precede the other; and, after both have concurred, the statute has been complied with and the contract becomes operative and valid.   (*McKnight* v. *Dunlop*, 5 N. Y., 537.)   The defendants agreed to take these identical hoops, and, after receiving them and thus fully complying with the statute, they could not reject them upon any objection to their quality. The only question, then, is, did they receive them, within the meaning of the statute?   And this involves the inquiry, whether, in a case where the purchaser has accepted the goods, a delivery to a carrier designated by himself will answer the requirement of the statute as to receiving the goods by the purchaser.   I am of opinion that it will.   It has finally been settled, both in this country and in England, that a delivery to a general carrier, not designated by the purchaser, is not a sufficient compliance with the statute (*Rodgers* v. *Phillips*, 40 N. Y., 519); and for the best of reasons.   In such a case the purchaser has done nothing beyond making the void contract.   He has neither accepted or received the goods himself, nor authorized or designated any agent to do it for him.   But, in

this case, the purchasers designated the agents of the "Curlew" to receive and transport the hoops to them. They were the agents of the defendants for the purpose of receiving the hoops from the plaintiffs.

It is not necessary to determine in this case that a mere carrier, designated by the buyer, can both accept and receive for him, so as to make a compliance with the statute; but I can find no reason founded upon principle, or authority, to doubt that, after the buyer has accepted the article purchased, a carrier, designated by him to take and transport it, can bind him as his agent by receiving it. While there is not upon this question entire harmony in the views of judges, and while the authorities cannot all be reconciled, the general drift of them is toward the conclusion I have reached. (2 Parsons on Con., 326; *Outwater* v. *Dodge*, 6 Wend., 397; *The People* v. *Haynes*, 14 Wend., 546; *Glen* v. *Whitaker*, 51 Barb., 451; *Spencer* v. *Hale*, 30 Vermont, 314; *Maxwell* v. *Brown*, 39 Maine, 98; *Hanson* v. *Armitage*, 5 Barn. & Ald., 557; *Acebal* v. *Levi*, 25 Eng. C. L., 170; *Coats* v. *Chaplin*, 43 Eng. C. L., 831; *Morton* v. *Tibbett*, 69 Eng. C. L., 427.)

It is said by some writers, that to create such an appropriation of the goods by the buyer as will answer the meaning attached to the words "accept and receive" in the statute, there must be such an actual delivery by the seller as will destroy all lien for the purchase-price, or right of stoppage *in transitu.* This, to the full extent, is not true. The seller has a lien for the purchase-price of the goods while they remain in his possession. And this lien he loses when he voluntarily parts with the possession, except when he delivers them to a carrier. In the latter case, his lien is extended and lasts, although the title has passed to the buyer, until the carrier has delivered the goods to the actual possession of the buyer. This lien is an arbitrary one, created by law. As observed by Lord KENYON, in *Hodgson* v. *Lay* (7 T. R., 436), it is "a kind of equitable lien adopted by the law for the purpose of substantial justice." When the seller retakes

the property in the exercise of this right of stoppage, he is not reinvested with the title, but simply placed in the actual possession of the goods, holding them as security for the purchase price.

The stoppage must be while the goods are *in transitu,* and that is usually when they are not in the actual possession of either party; and yet they may be in the actual possession of the buyer under such circumstances as not to take away the right of stoppage. This right exist, although the goods are shipped upon the buyer's own vessel, consigned to him at his place of residence. (*Stubbs* v. *Lund,* 7 Mass., 453; *Ilsley* v. *Stubbs,* 9 Mass., 65; Story on Sales, § 336.) The fact that the right of stoppage exists is no evidence that both the title and possession have not passed to the buyers. The contract of sale may be in writing, part of the purchase-money may have been paid, and there may have been a part delivery, and yet, if the seller consigns the goods by a carrier to the buyer, to be delivered to him at the place of their destination, the right of stoppage exists. And this may be so, even if the buyer is also master of the vessel, and he in person takes the goods and loads them upon his own vessel, provided, as in this case, the seller consigns the goods to the buyer to be carried by him to their place of destination. (Pars. on Mar. Law 335, etc.) Hence I hold that a carrier designated by the buyer may receive the goods purchased, so as to make a compliance with the statute of frauds; and this leads to an affirmance of the judgment.

All concur.

Judgment affirmed with costs.