## Case No. 12,212.

### Ex parte SAFFORD et al.

### In re DOWNING.

[2 Lowell, 563;[1] 15 N. B. R. 564; 15 Alb. Law J. 328; 24 Pittsb. Leg. J. 159.]

District Court, D. Massachusetts. April. 1877.

STATUTE OF FRAUDS — TITLE PASSED — ACTION AGAINST BUYER.

Leather was bought on a credit of sixty days, by parol, and the goods were weighed in the presence of the buyer, and the damaged hides rejected, and the shrinkage agreed on. They were then placed by themselves in the sellers' warehouse, marked with the buyer's name, and he was to send for them when he pleased. He made an arrangement with the sellers concerning the insurance of the goods. This course of dealing was usual between the parties. *Held*, the goods had been accepted and received by the buyer within the statute of frauds of Massachusetts, and the goods having been destroyed by fire in the sellers' warehouse, the sellers could prove for their price against the assets of the buyer in bankruptcy.

[J. O.] Safford & Co. offered for proof against the estate of [T.] Downing the price of certain lots of leather bought by him of them at sundry times under parol contracts. Some of the leather had not been taken away from the petitioners' store at the time of the great fire in Boston, on the night of Nov. 9–10, 1872. As to these lots, the question was whether they had been accepted and received by the bankrupt, within the statute of frauds of Massachusetts (Gen. St. c. 106, § 5). The parties had dealt together for a long time. The habit of Downing was to come to the warehouse of the petitioners nearly every day, and to buy entire "tannages," as the lots from a single tannery are called, on a credit of sixty days. The leather was always weighed in his presence; the damaged hides were thrown out, and shrinkage agreed on, and his leather was piled up by itself, and marked with his name; and he sent for it when he

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

pleased. Some time before the fire Downing asked one of the petitioners whether the leather was insured, and was told that they had a general insurance, which was more than enough to cover any probable loss, and that he should have the benefit of any surplus, after they were indemnified on their own stock. He testified that he made this inquiry because he considered the leather to be his.

B. J. Hayes, for creditors.
B. Dean, for assignee.

LOWELL, District Judge. The single question in this case is whether the goods had been accepted and received by Downing, within the meaning of the statute of frauds. They had been weighed in his presence, and the precise hides agreed on, and the shrinkage ascertained. At his request, though whether in his presence or not is not quite clear, they had been set apart from all other goods, and marked with his name; and he was to take them when he pleased to send his carrier for them. No delivery could be more complete, unless they had come into his personal possession; and I do not understand it to be denied that, at common law, the property would have passed. Undoubtedly the decisions upon the statute have introduced some refinements not easily reconciled with common sense, by which the property in goods is held to have passed and not to have passed at the same time; and they are said to have been delivered by the buyer before they are received by the seller. I have no intention of departing from those decisions; but this case steers wide of them.

The latest authorities make the distinction between accepting goods and receiving them to be this: Goods may be constructively delivered, as to a carrier or warehouseman, and yet not accepted, if, for instance, they were ordered by word of mouth, or bought by sample; and the carrier or warehouseman is not, as such, without special appointment, the agent of the buyer to ascertain that the goods conform to the order or to the sample; and, therefore, in such a case, the goods may be received and yet not accepted. It was formerly said that the goods must be received, and an opportunity be given to examine them, before they could be accepted; but in a very elaborate opinion of the queen's bench this doctrine was denied to be sound, and a defendant was held bound who had exercised acts of ownership over the goods, though he had not precluded himself from objecting that they did not conform to the contract; or, in other words, there might be an acceptance to satisfy the statute, and let in proof of the contract, which yet would not be an acceptance under the contract itself, when proved. Morton v. Tibbett, 15 Q. B. 428. In Cusack v. Robinson, 1 Best & S. 299, Blackburn, J., says, "Acceptance may be before receipt;"

and it was there decided that specific goods, agreed on and afterwards sent to a warehouse named by the vendee, had been both accepted and received by him. Whether the courts of Massachusetts would assent to the full extent of the law laid down in Morton v. Tibbett, ubi supra, I do not know; but I take it to be clear that, by the law of this state, and of the United States generally, as well as of England, if specific goods are fully agreed on and bought, and afterwards sent to a warehouseman or carrier designated by the vendee, the statute is satisfied. Ullman v. Barnard, 7 Gray, 554; Cross v. O'Donnell, 44 N. Y. 661; Howes v. Ball, 7 Barn. & C. 481; Dodsley v. Varley, 12 Adol. & E. 632.

There is no doubt that the vendor may himself be the warehouseman or bailee. This was decided in the leading case of Elmore v. Stone, 1 Taunt. 458. I have seen it stated that this case has been overruled; but that is a mistake. It was fully approved by Shaw, C. J., who states the exact case, though he does not cite it by name, in Arnold v. Delano, 4 Cush. 40. It was cited and followed in Beaumont v. Brengeri, 5 C. B. 301, and Marvin v. Wallis, 6 El. & Bl. 726, and its doctrine reaffirmed in Cusack v. Robinson, ubi supra. See Benj. Sales (2d Am. Ed.) 136. It has often been decided that there can be no sufficient receipt by the vendee, so long as the vendor holds as vendor, and insists on his lien for the price. The reason is given by Abbott, C. J., in an early case, that if the vendee had actually received the goods, it would necessarily follow that he could maintain trover for them, and the vendor would be left to his action for the price. Baldey v. Parker, 2 Barn. & C. 37. In this case there is no doubt that the vendor's lien was gone; for the vendee usually removed the goods within the sixty days for which credit was given, and had an undoubted right so to do.

If the decision were to turn merely on the conditional contract of insurance made by the vendee, that would be sufficient evidence to warrant a jury in finding a receipt of the goods. The cases are many where a sale, or a mere offer to sell, or a request by the vendee to the vendor to sell on his account, and various other acts of ownership, have been held sufficient for that purpose, though the goods remained in the actual possession of the vendor, or of a middleman. Chaplin v. Rogers, 1 East. 192; Blenkinsop v. Clayton, 7 Taunt. 597; Marvin v. Wallis, 6 El. & Bl. 726; Castle v. Sworder, 6 Hurl. & N. 828.

It may be said that a resale would be a fraud on the vendor, if the goods are not the property of the vendee, and that for this reason the latter is estopped; but the true reason is, that such an act is of itself evidence of acceptance and receipt; and a contract of insurance is fully as significant in this respect.

It was argued that, in a certain sense, the lien of the vendor was not gone, because, if the vendee had become insolvent, it might have revived under the decision in Arnold v. Delano, 4 Cush. 33, and similar cases; and it was added that, so long as the right of stoppage in transitu was not lost, there could be no receipt by the vendee. The law is so given in Story, Sales, § 276; but there are many decisions to the contrary of that statement, and none in its favor that I have seen. In Bushel v. Wheeler, 15 Q. B. 442, note, Coleridge, J., said of the right to stop in transitu, "That is a bad test: there might be stoppage in transitu, though there had been a note in writing." Lord Denman, C. J., made a similar remark in delivering the opinion of the court; and the decision covers the point. So are Cross v. O'Donnell, 44 N. Y. 661; Castle v. Sworder, 6 Hurl. & N. 828; and in point of principle the following cases, as well as those above cited, in which delivery of accepted goods to a carrier were held to have been received by the vendee within the statute, though in most of them the right of stoppage might have been exercised if the vendee had become insolvent: Dodsley v. Varley, 12 Adol. & E. 632; Howes v. Ball, 7 Barn. & C. 484; Pinkham v. Mattox, 53 N. H. 600. The revival of the vendor's lien in case of insolvency is an equitable doctrine very difficult to explain at common law; but it arises only upon bankruptcy or insolvency, and does not then revest the property.

Lastly, it is said that certain late cases in Massachusetts are opposed to the plaintiff's argument: Knight v. Mann, 118 Mass. 143; s. c., 120 Mass. 219; Safford v. McDonough, Id. 290. But they are not like this case. In the former, the goods were not taken out and weighed in the presence of the buyer; and he had done no act of acceptance except to authorize them to be set apart, and to say that he would send for them. The court said that he had still the right of examination and rejection, which it is clear that the bankrupt in this case had not. In the latter case, the plaintiffs were holding the goods as unpaid vendors, and had refused to deliver them excepting for cash or a satisfactory note. This case is more like Ross v. Welch, 11 Gray, 235, where the defendant bought growing cabbages, and received constructive delivery of them on the ground. It is true a few were actually delivered; but that fact is not noticed in the judgment of the court, who say, "An agreement to sell an article ready to be delivered and taken away, though still standing in the soil, unrevoked, is sufficient delivery to give effect to the sale between the parties."

It is not necessary to go so far in this case; because the hides were delivered in an unequivocal manner, and put by themselves, and insured for the buyer, though it happened, through most unforeseen circumstances, that the insurance was inadequate. With all the refinements to which I have before alluded, I know of no case, either in

England or the United States, in which such circumstances have not been considered evidence for the jury to find both acceptance and receipt to satisfy the statute; and, as a juryman, I have no hesitation in saying that they were so accepted and received, because this was the undoubted intent and understanding of both parties. Debt admitted to proof.