Thomas E. Flanigan, Plaintiff, *v.* Edmund Waterman, Doing Business under the Name of E. Waterman & Co., Defendant.

(Supreme Court, Washington County, January, 1922.)

Sales — Statute of Frauds — buyer not required at time of sale to accept goods or to receive any part thereof — defendant's statement that he had bought a certain boatload of potatoes constitutes an acceptance — place of delivery — purchaser assuming dominion over goods — liability of defendant for purchase price confirmed by letter deferring payment — motion for new trial denied — Personal Property Law, §§ 85(3), 124(3).

The Personal Property Law, section 85 (Laws of 1909, chap. 45, as amended by Laws of 1911, chap. 571), does not require that at the time of a sale of goods the buyer shall accept or receive any part thereof.

In an action by a cultivator of seed potatoes to recover $11,124.86, the purchase price of a cargo of seed potatoes sold to defendant, a New York potato dealer, under an oral contract upon which no earnest money was paid, proof that defendant stated to two or three other potato growers, that he had bought this particular boatload from plaintiff,

Supreme Court, January, 1922. [Vol. 117.

constitutes an acceptance thereof by defendant under section 85(3) of the Personal Property Law which provides that, "There is an acceptance of goods within the meaning of this section when the buyer, either before or after the delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

The plaintiff on the same day that he notified defendant that the potatoes were in the canal boat *Malinda Reilly* notified the captain that he had sold the potatoes to the defendant, having previously informed the captain of the sale, and advised him to call on defendant in a day or two to find out when he would start to unload the boat. After the captain over the telephone had told defendant plaintiff's name and the name of the boat, defendant told him he would start the boat next Monday or a week from Monday and the captain said that would be all right. In the same conversation the defendant admitted that the potatoes had been sold to him by the plaintiff. *Held,* that under section 124 of the Personal Property Law the canal boat was the place of delivery and the captain having pursuant to subdivision 3 of said section acknowledged to defendant that he held the potatoes on defendant's behalf, the defendant by his statement to the captain as to when he would begin taking the potatoes off the boat, assumed dominion over them and was liable for the purchase price.

A letter written by defendant to plaintiff after telling the captain when he would start unloading the boat, in which letter he in no wise repudiated the contract, except that he deferred payment on account until he started to unload the boat, evidenced his assent to become the owner of the potatoes.

The answer alleged that the agreement sued on was for the sale of goods in excess of fifty dollars; that no agreement in writing was ever made and subscribed by defendant; that he did not at the time of the alleged sale accept or receive any part of said goods or at any time pay any part of the purchase price. *Held,* that assuming that the defense of the Statute of Frauds was properly pleaded, a motion for a new trial after a verdict in favor of plaintiff will be denied.

MOTION for new trial after verdict for plaintiff.

Rogers & Sawyer, for plaintiff.

Thomas P. Hall, for defendant.

NICHOLS, J. The plaintiff is a farmer in Washington county, engaged in the cultivation of seed potatoes which he sold to dealers in New York city. These potatoes were conveyed by canal boats through the barge canal to the Hudson river and thence to the city of New York. In the years 1918 and 1919 the plaintiff sold a boatload of seed potatoes to the defendant, a New York potato dealer. December 13, 1920, plaintiff had a boat loaded with potatoes in charge of Captain Reilly lying in pier 4 or 5, Coenties slip, New York city. On December thirteenth the plaintiff called on the defendant and had some conversation about the sale of his potatoes to the defendant. The offer that the defendant made for the potatoes was not satisfactory, and plaintiff left defendant's office, saying he would look around a little; he returned on the following day and said he would let the defendant have the load of potatoes, which consisted of about 7,600 bushels, of which 333⅓ barrels were " Giants " and the balance were " Peerless." The price for the Giants was $4.62 a barrel, amounting to $1,540, and the Peerless came to $9,584.86, making a total of $11,124.86, which is the price and the amounts defendant agreed to pay. The contract was not in writing, nor was there any earnest money paid that day, the defendant agreeing to pay $3,000 on account January first, following. The plaintiff notified the defendant that the potatoes were in Captain Reilly's canal boat, which was named *The Malinda Reilly.* The defendant told the plaintiff that it would be after Christmas when he would start to take the potatoes off the boat. The plaintiff told the defendant that he would notify the captain of the boat that the defendant would begin on the first boat next to the dock to unload, there being three other canal boat loads of potatoes belonging to other farmers and sold to the defendant, in the same

slip. On the same day the plaintiff notified Captain Reilly that he had sold the potatoes to the defendant. Captain Reilly was informed by the plaintiff on December thirteenth of the sale of the cargo to the defendant and advised him to call on the defendant in a day or two to find out when he would start the load. Captain Reilly called the defendant on the telephone and the defendant asked him where the boat was; Reilly told him where the boat was and the defendant asked him who had that load, and Reilly told the defendant his (plaintiff's) name and the name of the boat, and the defendant told him he would start the boat Monday or a week from Monday and that he was going to unload the three boats of Henry and Crowley and said: " You will be the fourth boat to be unloaded." Reilly, in that conversation, told the defendant that plaintiff had told him that he had sold the potatoes to defendant to which the defendant replied " Yes." When the defendant notified Captain Reilly that he would start the boat next Monday or the following Monday, Captain Reilly said that would be all right.

December 27, 1920, defendant wrote plaintiff, stating, " I regret that conditions have changed, so that until we start unloading your boat, it will be impossible to send you any funds. I know that you will understand the situation."

On January 12, 1921, the defendant again wrote plaintiff as follows: " Immediately upon opening up Crowley's and Henry's boats, we found these potatoes to show considerable rot and I immediately wrote you that we would not be able to use your load. I regret this very much but in view of the experience we are having with these two loads, we think it best not to attempt to ship anything else."

The defendant's answer sets up the Statute of Frauds as a defense, alleging that the agreement men-

tioned in the complaint was for the sale of goods in excess of fifty dollars, that no agreement was ever made in writing and subscribed by the defendant; nor did the defendant at the time of the alleged sale accept or receive any part of the said goods or did defendant at any time pay any part of the purchase price.

While there may be some question, from the language of this defense, as to whether the defense of the Statute of Frauds has been pleaded, because there is no requirement in the statute (Pers. Prop. Law, § 85), that the buyer at the time of the alleged sale should accept or receive any part of the said goods; but we will assume for the present that the defense is properly pleaded. By subdivision 3 of section 85 of the Personal Property Law, it is provided: " There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." The defendant stated to two or three other potato growers that he had bought this boatload of potatoes from the plaintiff. This beyond any question constituted an acceptance of the load.

By section 124 of the Personal Property Law it is provided that the place of delivery, in the case of a contract of sale of specific goods, which to the knowledge of the parties when the sale was made were in some other place, then that place is the place of delivery. Therefore, the canal boat, *Malinda Reilly,* was the place of delivery. By subdivision 3 of section 124 of the Personal Property Law, it is provided that where the goods at the time of the sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf. Captain Reilly acknowledged to

the defendant that he held the goods on the defendant's behalf, and the defendant assumed dominion over them, stating to Captain Reilly that he would begin taking the potatoes off the boat either the next Monday or Monday of the week following that. In *Outwater* v. *Dodge,* 6 Wend. 397, the court says: " Thus, if the articles are ponderous, and not easily susceptible of actual delivery, and the vendee proceeds to exercise a right of ownership over them, by disposing of them, or giving orders and directions respecting them, this will justify a jury in finding a delivery and acceptance."

In *Bowe* v. *Ellis,* 3 Misc. Rep. 92, the court says: " Proof of any act or acts from which it may be reasonably inferred that the seller has abandoned possession as owner, and that the purchaser has assumed it, is sufficient evidence of acceptance and receipt to take an oral contract of sale out of the Statute of Frauds, without further proof that the goods were actually transferred from one place to another."

The letter of the defendant of December twenty-seventh was conduct of the defendant showing his assent to becoming the owner of these specific goods; he in no wise repudiates the contract, except that he defers payment on account until he starts the unloading of the boat.

If the defendant's answer is not sufficiently broad to plead the Statute of Frauds as a defense, then, of course, the action would be undefended.

There has crept into this case in some manner not exactly clear to myself, a question of practice. In my charge to the jury, I say: " Now I am going away and I am going to allow you gentlemen to report your verdict to the clerk when you have agreed upon it." To this, no exception was made by either of the parties. After the jury had retired, I then stated to the attor-

neys: " The verdict may be received by the clerk in session, if you desire. You may take a recess until they come in, and then the clerk may adjourn it to Hudson Falls after the receipt of the verdict." No exception was taken to this by either of the parties. After the rendering of the verdict the defendant's attorney moved as follows: " The defendant moves to set aside the verdict on the ground it is contrary to law, contrary to and against the weight of the evidence, and on all the grounds mentioned in section 999 of the Code," in no wise objecting or excepting to the manner in which the verdict had been received. In *Morris* v. *Harburger,* 100 App. Div. 357, Mr. Justice Hatch, writing for a divided court, where the trial justice at the close of his charge had stated, that as he was about to leave the city, he would authorize the clerk of the court to receive the verdict of the jury, and the parties interposed no objection to this proceeding, the court says: " Were the question an original one, I should hesitate in holding that the parties were not estopped by consenting that the clerk receive and enter the verdict;" but the court reversed the judgment upon the ground that the court could not leave the trial and authorize the clerk to receive the verdict of the jury; that the consent of the parties did not cure such error and could not be delegated by the court to the clerk, even by consent. This doctrine was overthrown by the Court of Appeals in the case of *Dubuc* v. *Lazell, Dalley & Co.,* 182 N. Y. 482, the court holding at page 487: " The absence of the trial judge when the verdict was received was at most an irregularity which the parties could and did waive."

The motion for a new trial must be denied.

Motion denied.