### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT ATLANTA,

## MARCH TERM, 1858.

Present—JOSEPH H. LUMPKIN,
CHARLES. J. McDONALD, } Judges.
HENRY L. BENNING,

---

JOSIAH PYRON, surviving executor, plaintiff in error, vs. SA-
RAH C. PARKER, and others, defendants in error.

A deed of gift of a slave, if made and recorded according to the provisions of the
Act of 1838, "to prescribe the mode of making gifts of slaves," is good against
subsequent purchasers from the donor.

Trover, from Spalding county. Tried before Judge CAB-
INESS, November Term, 1857.

This was an action of trover brought by Sarah C. Parker,
and others, against Josiah Pyron and Lewis Pyron, execu-
tors of James Shipp, deceased, for the recovery of a negro
woman slave named Caroline.

Lewis Pyron, one of the executors, died pending the suit,
and the action proceeded against the survivor.

Plaintiffs offered and read in evidence a deed of gift from John Parker, their father, whereby he, in consideration of love and affection, conveyed to them one lot of land in Pike county containing 202½ acres, one half lot in the same county containing 101¼ acres, and twenty-five acres, part of another lot in same county; also, four negroes, Zill, Till, *Caroline* and Hannah; also, one bay horse, one bay mare, one cart and oxen, fifteen head of cattle, thirty-five head of hogs, and all *his* stock of *provisions, corn, fodder,* and all his *household* and kitchen furniture. He appointed Beverly Pyron agent, to act and do with the property conveyed to his children as he might think best for them. The deed bore date 29th March, 1842, and was recorded in the office of the Clerk of the Superior Court, 26th May, 1842. It was signed and sealed by John Parker, and witnessed by two witnesses, one being a Justice of the Peace.

Plaintiffs then read the answers to interrogatories of *Henry Jones,* who testified, that in the year 1852, James Shipp bought the negro Caroline from John Parker and his wife, but does not know whether Shipp ever had her in possession or not. She was worth between four hundred and four hundred and fifty dollars; that Shipp, he *thinks, died* in the latter part of the year 1853, in Pike county; knows that Shipp, at the time he bought Caroline, knew that John Parker *had made a deed of gift of* said negro *to* his children, because, before that time, witness and Shipp had stood John Parker's security *to* Isaac B. Williamson, on a note for about $400, and Williamson wanted his money, and hearing that Parker had made a deed of gift of his property to his children, witness and Shipp went to Zebulon and examined the Clerk's office, and found the deed on record.

In answer to the cross interrogatories, witness says, that John Parker was indebted, at the time the deed of gift was made, to John Neal and Joseph Scott, but knows of no other *indebtedness,* and *knows of no suits then pending against*

him; that he had no other property not included in the deed of gift, except some little stock; does not know how many children he had; Parker is in a very poor condition; is worth nothing, and is a man of very weak mind, almost no mind at all, and has been in his present condition, as to property and mind, from three to five years; witness has furnished his family with from fifty to seventy-five dollars worth of provision annually for four or five years past, which was paid out of the proceeds of the crops made by the family up to the present year; does not know what went with the money paid for the negro Caroline, but supposes that it went to pay for provisions. At the time Shipp bought the negro, Parker owed him about $120, and supposes he had been owing it one or two years.

*Martha Parker*, the wife of John Parker, the donor, in answer to interrogatories, testified, that she was present when Shipp bought Caroline; she was delivered to him the same day he bought her, and he carried her off; and told witness afterwards that he hired Ab. Woods to carry her off and sell her for him; Shipp knew that she had been given to the children before he bought her, because he and her husband had made an effort to break the deed and failed.

To the cross interrogatories, she answered, that she did not know to whom John Parker was indebted at the time of making the deed; he owed Joseph Scott and John Neal, but how much did not know; he may have owed others. John Parker is my husband; we were husband and wife at the time the deed was made. The two first named plaintiffs are my step-children; William R. Dunn is my son-in-law, and the other plaintiffs are my children; I have two children younger than those named as plaintiffs; my youngest son named as plaintiff was born in December, and the deed was made the following May; I think about fifteen years ago. Does not know how much her husband was indebted at the time the deed was made, nor to whom, except to Joseph Scott and John Neal. Never persuaded him, in the presence of

Robert Murphy and wife, to make the deed to keep the negroes from being taken to pay his debts, and never heard him say he made it for that purpose. James Shipp bought Caroline and employed Ab. Woods to carry her off and sell her; don't know how Shipp paid for her; John Parker had very little property besides that contained in the deed when the deed was made, and that consisted of household and kitchen furniture, with perhaps a small stock of hogs and cattle.

Here plaintiffs closed.

*Abraham D. Woods*, for defendant, testified, that he knew the negro Caroline; was present when she was sold; Shipp did not purchase her, but was present at the sale; he had a debt against Parker, and also against witness; Shipp took up witness' note, and gave his note to Parker for the balance of the purchase money; Shipp did not take possession of the negro, nor did he sell her; he took her up behind him on leaving Parker's, as witness' mare was unruly; delivered her to witness on separating with him; he did not employ witness to sell the negro or to carry her off.

*Cross Examination.*—Shipp took no bill of sale; the negro was carried off in the summer of 1851. Shipp's debt on Parker, which was paid by witness in the purchase of the negro, was sixty or seventy dollars; witness kept her some two or three months; she stayed at Shipp's until the next day after she was bought; witness sold her to a man by the name of Hornbuckle, in Perry county, Alabama, for over $500; carried her off in 1851; she was kept after her purchase first at Mark Tidwell's, in Merriwether county, afterwards at Mr. Stamper's, in Alabama; she crossed the State line in 1851; witness lives in Haralson county. Shipp and Parker were brothers-in-law; Shipp did act as Parker's agent; Parker sent word to witness by Shipp, and upon receiving that word, witness went up to Parker's and made the trade with him; Shipp gave Parker his note for the balance of the purchase money due from witness for the negro; witness

had a note on Grier, and proposed to give it to Parker; he refused to take it, but said he would take Shipp's note; let Shipp have Grier's note, and Shipp gave Parker his note; told Parker to send me (witness) word if he accepted my proposition; Shipp brought word that he accepted it, and witness accordingly went.

Defendant then offered to prove by *Joseph Scott*, that at the time the deed of gift was made, John Parker was indebted in an amount about equal to the property he had, and that he was then indebted to John Coggins about one thousand dollars; to Isaac Williams seven hundred dollars; and to said Scott seven hundred dollars; and at the time the deed was made, Shipp was a creditor of Parker. The Court rejected this testimony, and defendant excepted.

The Court charged the jury, that if a debtor make a voluntary conveyance to his children or others, the conveyance is void as to creditors, but good against the grantor and purchasers from him, with notice of the conveyance. And if a creditor purchase from the grantor, with notice of the conveyance, he takes subject to the claim of the grantees in the voluntary conveyance.

Creditors might set aside the conveyance, so far as their debts are concerned, but not by a purchase from the grantor.

The grantor having parted with title to the property, loses all control and dominion over it; and a subsequent sale, to a creditor, with notice, will convey no title; but if a creditor should purchase without notice of the voluntary conveyance, his title will be good, and creditors, who become such after the execution of the voluntary conveyance, with notice, will acquire no title. But purchasers, whether creditors or not, or whether prior or subsequent creditors, purchasing without notice, are protected.

To which charge defendant excepted.

The jury found for the plaintiffs four hundred dollars,

which might be discharged by the delivery of the negro girl
Caroline by the 1st January, next, and the further sum of
two hundred dollars for hire, &c.

Defendant moved for a new trial on the grounds,

1st. Because the verdict is against law and evidence, and
the weight of the evidence.

2d. Because the Court erred in rejecting the evidence of
Joseph Scott.

3d. Because the Court erred in charging the jury that a
*creditor*, with notice of a voluntary conveyance, acquired no
title by a purchase from the grantor after the making of the
deed and notice thereof.

4th. Because of newly discovered evidence since the trial.

The Court refused the motion for a new trial, and defend-
ant excepted.

H. Green; and O. C. Gibson, for plaintiff in error.

Hall; and Floyd, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

John Parker, in 1842, made a deed of gift to his children,
of all of his property, which included some negroes. This
deed was signed and sealed by him, was attested by two sub-
scribing witnesses, one of whom was a Justice of the Peace,
and was regularly recorded within twelve months from its
date.

In 1852, he sold one of the negroes, to Shipp or to Wood,
to which of the two, the testimony leaves in some doubt.

At the time of this sale, Shipp held a debt of $120, on
Parker, but it was a debt of not more, probably, than one or
two years standing; Wood held no debt.on Parker.

The Act of 1838, "to prescribe the mode of making gifts
of slaves," is, in its first section, as follows: " *Be it enacted,*

That no gift of any slave, or slaves, hereafter to be made, shall be good or available in law, or in equity, against the creditors of the donor, or subsequent purchasers from him, without actual notice, unless the same be made in writing, signed and sealed by the donor, attested by at least one subscribing witness, and shall be proved or acknowledged, and be recorded within twelve calendar months from the execution thereof." *Cobb Dig.* 176.

This is as much as to say too, by implication, that if such deed be "made in writing, signed and sealed by the donor," &c., it shall be good and available "against the creditors of the donor, or subsequent purchasers from him," even though they be "without actual notice."

In that case, whether it was Shipp, or Wood, that was the purchaser, he was a purchaser subsequent to the deed of gift; and if it was Shipp, he was also a purchaser with actual notice of that deed. And Shipp, considered as a creditor, was also a creditor subsequent to the deed.

It follows, that the deed of gift was good and available against Shipp, or Wood, whichever it was, that was the purchaser.

It must also follow, that the rejection of Scott's testimony, was right, and, that none of the charges of the Court was such, that the plaintiff in error, could complain of it.

The newly discovered evidence, could have served no purpose, except to impeach Mrs. Parker, if that; but if her entire testimony were rejected, the verdict ought still to stand—the other evidence, and the statute aforesaid, considered.

Judgment affirmed.