## BULLOCK & Co. v. TSCHERGI & SCHWINDE.

*(Circuit Court, D. Iowa. 1882.)*

CONTRACT OF SALE—STATUTE OF FRAUDS—DELIVERY TO COMMON CARRIER.

A delivery of goods by a vendor to a common carrier is a delivery to the vendee, though such carrier was not designated by him, and under the provision of the Iowa statute of frauds that no evidence of any contract for the sale of personal property is competent when no part of the property is delivered, and no part of the price paid, such a delivery is sufficient to take the contract out of the statute.

LOVE, D. J. The question presented upon the facts of this case is whether or not the delivery of goods under an oral contract of sale to a common carrier (not designated by the purchaser) in the usual course of transportation is sufficient, under the Iowa statute of frauds, to bind the contract.

The language of the Iowa statute, it will be seen, differs very materially from that of England, and many of the states of the Union. The Iowa statute of frauds provides that it shall embrace, among other contracts, "those in relation to the sale of personal property, when no part of the property is *delivered*, and no part of the price paid."

The language of the English statute is somewhat different. It provides—

"That no contract for the sale of any goods, wares, and merchandise, for the price of 10 pounds sterling or upwards, shall be allowed to be good, except the buyer shall *accept* part of the goods so sold, and *actually receive* the same, or give something in earnest to bind the bargain or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized."

In many of the state statutes, and among them those of New York, Massachusetts, and Georgia, the same words, "accepted and received," are used, and these words have been expounded by many English and American decisions. Unquestionably, wherever these words have been used, it has been held that in order to dispense with the necessity of writing, the goods must be both "*accepted and received*," and that one or the other is not sufficient. It is well settled in England, New York, Massachusetts, Georgia, and some other states, that the mere delivery of the goods is not sufficient under the statute, because the words "delivery" and "received" are "correlative terms," and therefore that the goods must not only be "deliv-

ered" or "received" but also accepted, in order to comply with the terms of the statute. But delivered and accepted are not, according to these decisions, equivalent terms. Goods may be delivered and not accepted, but, on the contrary, rejected, as not corresponding to samples, or as otherwise contrary to the conditions of the contract. Hence it has been held, in England and in the states referred to, that delivery to a common carrier is not sufficient under their statutes of frauds, because the carrier is authorized to "receive" but not to accept goods for the vendee, while the statute requires that they shall be both received or delivered and accepted, in order to bind the bargain without writing. But the decisions in England and the states, referred to at the same time, hold that a delivery to a common carrier, though not designated by the purchasers, is a good and perfect delivery to the latter; that the carrier is *quoad hoc* his agent; that the possession is after such delivery in the purchaser, and the goods at his risk; that the lien of the vendor for the price is upon the delivery to the carrier lost, by reason of the fact that the possession has been transferred from him to the purchaser; and that the vendor's only remaining right to the goods after such delivery is that of stoppage *in transitu.*

But these decisions further hold that the common carrier is the agent of the vendee for the purpose of delivery only, and not of acceptance, etc. The common carrier cannot accept for the vendee, because acceptance implies assent that the goods are in accordance with the contract. Acceptance implies a mental act. It is by such mental act that the purchaser finally gives assent to the performance of the contract by the vendor, as being in full compliance with the terms of the contract of sale. Such was the exposition of the words "accepted and actually received" by the courts of England and the American states. But we see that these words are entirely omitted in the Iowa statute, and the word "delivery" alone used, and that the word "delivery," according to the adjudication, had been held to be equivalent to "received." There is no word in the Iowa statute equivalent to the word "accepted." Can we suppose that the codifiers were ignorant of the previous adjudications as to the meaning of the words "accepted and received?" Can we assume that they omitted the word "accepted," or any equivalent term, from the statute unintentionally or by mere accident? Such assumptions would be violent and untenable. We must conclude that the word "accepted" was omitted intentionally, and that the purpose of the legislators was that delivery alone, without "acceptance," should be sufficient to

dispense with the necessity of writing. Nor was this change of phraseology without good and solid reason in the mind of the framers of the Iowa statute. The delivery of the possession of goods is an open, visible, tangible act. It is a physical fact, manifesting the intention of the parties. A sale, therefore, with delivery of possession, is a totally different thing from a sale by mere words, without any outward symbol of the intention of the parties. A sale by words only would open the door to fraud and false swearing. A sale with delivery removes this danger, as far as it can be removed, and to the extent that the statute of frauds intended to remove it. Delivery of possession, therefore, accomplishes the very purpose of the statute, and the mere act of acceptance could add little or nothing to that purpose. Hence was the word "accepted" omitted from the Iowa statute.

Now, delivery to a common carrier is not only an open and visible act, calculated to satisfy the policy of the statute, but is ordinarily susceptible of more satisfactory proof than a delivery direct to the vendee, since, in many cases, the vendee would be the only witness of delivery to him, while delivery to a carrier could always be proved by many disinterested witnesses.

Again: The Iowa statute is, by its express terms, a statute of evidence. "No evidence of the contracts enumerated is competent without writing, unless the goods be delivered," etc. In this it differs somewhat from the terms of the English statute, which provides that no *action* shall be maintained upon any of the contracts named which shall not be in writing, etc. The purpose of the Iowa statute was to prescribe a mode of proof which would, as far as possible, avoid the danger of fraud and perjury. Its framers must have known that it had been settled that delivery to a common carrier is a good and perfect delivery, and we may assume that they saw clearly that such a delivery would be more susceptible of certain proof as evidence of the bargain, and less exposed to the danger of perjury and fraud, than any direct delivery to the purchaser could possibly be. Proof of a direct delivery by the vendor to the vendee might rest upon their own testimony; whereas a delivery to a common carrier might be shown by the testimony of the intervening agents, and by the very circumstances of the transaction. Hence a delivery to a common carrier would more effectually accomplish the purpose of the statute than a direct and immediate delivery to the vendee.

But, again, let us consider the effect in commercial transactions of a rule that nothing short of acceptance by the vendee is sufficient to bind an oral contract for the sale of goods. The distant merchant visits the city and makes his purchases orally. It would be highly inconvenient to require that all such purchasing contracts should be reduced to writing. Now, if nothing short of the acceptance of the goods by the purchasing merchant when they reach him, would make the contract valid and binding under the statute of frauds, how could the selling merchant, with any safety whatever, venture to forward the goods? The goods might be in strict accordance with samples, if sold by sample, or with the terms of the oral contract, if sold otherwise; and yet the purchasing merchant would be at perfect liberty to reject them without incurring the least liability. The purchasing merchant might simply say: "True, the goods are all right,—they are in strict accordance with the samples and the contract,—but there was no writing, and I have not yet accepted them, therefore I will simply throw them on your hands." But suppose the vendor may bind the bargain by delivering the goods to the common carriers in the regular course of business, he can with safety forward them, and the vendee, when they reach him, would still be at liberty to refuse them if unsound, or otherwise not in accordance with the contract. The vendee could thus hold the vendor to a strict compliance with his contract, but he could not, at his mere caprice, or as his interest might dictate, reject the goods to the serious loss and inconvenience of the vendor. Thus the delivery to the common carrier would simply take the place of writing to withdraw the contract from the operation of the statute of frauds. Even if the contract were in writing the vendee might refuse to accept the goods. Indeed, he might reject them, notwithstanding the writing, as not in accordance with samples or the conditions of the contract. This he would of course do at his peril, and if the vendor could show that the goods were in strict accordance with the contract, the seller could make the vendee liable as upon a breach of contract. Precisely the same results would follow if it be the law that delivery to a carrier takes the case out of the statute.

Thus, in Benjamin's learned work upon Sales, § 675, we find the following:

"When questions arise as to the 'actual receipt' which is necessary to give validity to a parol contract for the sale of chattels exceeding 10 pounds value, the judges constantly use the word 'delivery' as the correlative of 'actual receipt;'" citing *Carter* v. *Kingman*, 103 Mass. 517.

Mr. Justice Blackburn, in commenting on this clause, makes the following remarks:

"If we seek for the meaning of the enactment, judging merely by the words and without reference to decisions, it seems that the provision is not complied with unless two things concur: the buyer must accept, and he must actually receive part of the goods; and the contract will not be good unless he does both. And this is to be borne in mind, for as there may be an actual receipt without acceptance, so may there be acceptance without any receipt." Benj. Sales, § 139.

Again:

" The receipt of part of the goods is the taking possession of them. When the seller gives to the buyer the actual control of the goods and the buyer accepts such control, he has actually received them. Such receipt is often evidence of acceptance, but it is not the same thing; indeed, the receipt by the buyer may be and often is for the express purpose of seeing whether he will accept them. If goods of a particular description are ordered to be sent by a carrier, the buyer must, in every case, receive the package to see whether it answers his order or not; it may even be reasonable to try a part of the goods by using them; but, though this is a very actual receipt, it is no acceptance so long as the buyer can consistently object to the goods as not answering the order. It follows from this that a receipt of the goods by a carrier or on board ship, though *a sufficient delivery to the purchaser*, is not an acceptance by him so as to bind the contract; for the carrier, if he is agent to receive, is clearly not one to accept goods." Section 140.

And this, says Benjamin, is also the law of the United States; citing *Calkins* v. *Holman*, 47 N. Y. 449.

The same distinction between the acceptance and receipt of goods is taken in Georgia. *Lloyd* v. *Wright*, 25 Ga. 215. The court says:

" The statute requires that the purchaser should ' actually receive the goods.' And although goods are forwarded to him by a carrier by his direction, or delivered abroad on board a ship chartered by him, still there is no acceptance to satisfy the act so long as the buyer continues to have the right to object either to the *quantum* or quality of the goods.

" The *Case of Dutton*, 3 Bos. & P., relied on, was a mere question of what constituted a good delivery. It consequently does not meet the question now presented. The decision there was that a delivery of goods by the vendor in behalf of the vendee, to a carrier not named by the vendee, was a delivery to the vendee; that is, it was a good delivery to bind the contract, but not a sufficient delivery to take the case out of the statute of frauds, which requires that the goods should be ' actually received,' to come within the meaning of the statute."

Hence it is evident that if the language of the Georgia statute had been simply "delivery," the delivery to the carrier would have been held sufficient.

Again, Benjamin, § 804.

"A delivery of goods to a common carrier for conveyance to the buyer is such a delivery of actual possession to the buyer through his agent, the carrier, as suffices to put an end to the vendor's lien;" citing a large number of authorities. See, also, section 675.

Again, Benjamin, § 181, says:

"It is well settled that a delivery of goods to a common carrier—*a fortiori* to one specially designated by the purchaser for a conveyance to him or to a place designated by him—constitutes an *actual receipt* by the purchaser. In such cases the carrier is, in contemplation of law, the bailee of the person to whom, not by whom, the goods are sent; the latter, in employing the carrier, being considered as the agent of the former for that purpose. It must not be forgotten that the carrier only represents the purchaser for the purpose of receiving, not accepting, the goods. The law of the United States is the same." *Cross* v. *O'Donnell*, 44 N. Y. 661; *Caulkins* v. *Hellman*, 47 N. Y. 449; citing a large number of English and American cases in note *g*.

In note *g* it is said:

"It is not necessary that the purchaser should employ the carrier personally, or by some other agent than the vendor. We see no reason why a delivery to a warehouseman should not have the same effect." *Merchant* v. *Chapman*, 4 Allen, 362; *Hunter* v. *Wright*, 12 Allen, 548–550.

The doctrine in section 181 is repeated with some emphasis in section 693.

In *Phillips* v. *Bistoile*, 2 Barn. & C. 511, the court say:

"To satisfy the statute there must be a delivery of the goods by the vendor with intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with an intention of taking to the possession as owner." Id. 142.

And in note *g*:

"A mere delivery is not sufficient; there must further be an acceptance and receipt by the purchaser, else he will not be bound;" citing *Sheppard* v. *Pressy*, 32 N. H. 57.

Again, in same note:

"In truth the statute is silent as to the delivery of the goods sold, which is the act of the seller. It requires the acceptance and receipt of some part thereof, which are subsequent acts of the buyer." *Foster*, J., in *Boardman* v. *Spooner*, 13 Allen, 357; *Prescott* v. *Lock*, 51 N. H. 94.

Again, section 155:

"In *Combs* v. *Bristol & Exeter R. Co.*, *Pollock*, chief baron, said the 'vendee should have an opportunity of rejecting the goods. The statute requires not only delivery, but acceptance.'

"In May [says Benjamin] he confidently assumed that the construction which attributes distinct meanings to the two expressions, 'acceptance' and

actual receipt,' is now too firmly settled to be treated as an open question, and this is plainly to be inferred from the opinions delivered in *Smith* v. *Hudson.*" Section 156.

And in section 157:

"That acceptance may precede receipt." *Cusick* v. *Robinson,* 1 Best & S. 299.

Again, section 160:

"It is settled that the receipt of goods by a carrier or wharfinger appointed by the purchaser does not constitute acceptance, these agents having authority only to receive, not to accept, the goods for their employers. But it is held that if, after acceptance, the vendor delivers the goods to a carrier named by the purchaser, the receipt of them by the carrier is a receipt by the purchaser." Note *a* to same section.

NOTE. See *Burnside* v. *Rawson,* 37 Iowa, 639; Code, § 3636; 4 Greene, 410; *Partridge* v. *Wilsey,* 8 Iowa, 459; 47 N. Y. 452; 1 N. Y. 265, quoting statute, "The buyer should accept and receive some part of the goods," on page 265; 6 Wend. 400, (important; date of decision, 1831;) *Outwater* v. *Dodge,* 120 Mass. 315; *Noman* v. *Phillips,* 14 Mees. & W. 277; *Combs* v. *Ry. Co.* — Hurl. & N. 510; 9 Cush. 115.