MARY M. BABCOCK, Administratrix, etc., Respondent, *v.* SAMUEL BONNELL, JR., Appellant.

A policy of insurance upon the life of B., plaintiff's intestate, was taken out and delivered to defendant as collateral security for two promissory notes against B. & Co., amounting to $4,678.48. These notes the court found, were subsequently compromised and settled, defendant receiving from one W. $925 in full satisfaction, and surrendering the notes, which were delivered to B. & Co., who destroyed them. W. testified that he purchased the notes of defendant, paying his own money, and afterward delivered them to B., on receiving the amount paid and his expenses. B. paid the first premium on the policy; defendant paid those accruing thereafter. In an action for an accounting, etc., *held*, that defendant was bound by the settlement, and plaintiff was entitled to the proceeds of the policy, less the premiums paid and interest.

As to whether a stoppage *in transitu*, by a vendor, of goods sold on credit is to be regarded as a rescission of the sale, or simply as an assertion of a right to enforce a lien for the purchase-price, *quære*.

Upon the theory that the right is to enforce a lien, the vendor must hold the property until the expiration of the credit, and be able to deliver it upon payment of the price, the purchaser having the right to pay the price and take the property; if not paid at the time stipulated, the vendor may sell upon giving notice.

The authorities as to the principle upon which the right of stoppage *in transitu* is founded collated; the prevailing current of American decisions stated as favoring the theory of a lien.

(Argued February 6, 1880; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 12 J. & S., 568.)

This action was brought by plaintiff as administratrix of Charles A. Babcock, deceased, for an accounting as to payments of premium made by defendant upon a policy of insurance issued on the life of said intestate, and alleged to have been pledged by him to defendant as collateral security for a debt which had been settled and paid, and for an adjudication that plaintiff is entitled to the balance of the proceeds of the policy less such payments and interest.

The court found, in substance, that the deceased procured the policy in question in February, 1870, he paying the first annual premium ; that said policy was delivered to and received by defendant as collateral security for an indebtedness to him of the firm of Charles A. Babcock & Co., upon two promissory notes amounting to $4,678.48, and that defendant never acquired any interest in said policy except as aforesaid ; that in April, 1870, the indebtedness was "satisfied and discharged, the said indebtedness and the said notes were compromised, settled and extinguished ;" that " the defendant received the sum of $925 by way of compromise and in full satisfaction, settlement and discharge of the said indebtedness, evidenced by the said two notes, and thereupon delivered up and surrendered the said two notes to one Joseph S. Wheelright, who received them on behalf of said C. A. Babcock & Co. ; that subsequently thereto the said Joseph S. Wheelright delivered up and surrendered the said notes to the said firm of C. A. Babcock & Co., by whom they were destroyed and canceled."

The court also found that " on the 15th day of November, 1869, the defendant sold a cargo of coal to said Charles A. Babcock & Co., and took a note in payment therefor of $1,226.44, due March 15, 1870 ; the said last-mentioned cargo of coal was shipped to said Charles A. Babcock & Co., by the schooner Hepzibah, on or about the 21st day of February, 1870, the defendant through his agent, Edward Gullager, stopped the said last-mentioned cargo of coal *in transitu*, took possession thereof and disaffirmed the contract of sale therefor, and on the 4th day of May, 1870, sold the said last-mentioned cargo of coal to one E. S. Farrar." And, as a conclusion of law, the court found that plaintiff was entitled to the avails of the policy, less the premiums paid thereon by defendant with interest.

Further facts appear in the opinion.

*Wm. W. Niles*, for appellant. The stoppage of the goods *in transitu* was not a rescission of the contract. (*Hodgson*

v. *Loy*, 7 Term. R., 445; *Teise* v. *Wray*, 3 East, 93; *Lickbarrow* v. *Mason*, 6 id., 25, note; *Ex parte Gwynne*, 12 Ves., 379; *Martindale* v. *Smith*, 1 Q. B., 389; *Edwards* v. *Brewer*, 2 M. & W., 378; *James* v. *Griffin*, 2 id., 632; 1 Pars. Admir., 484, note; *Hunn* v. *Bowne*, 2 Cai., 38, 42; *Rowley* v. *Bigelow*, 12 Pick., 307, 313; *Stanton* v. *Eager*, 16 id., 467, 475; *Arnold* v. *Delano*, 4 Cush., 33; *Hatch* v. *Lincoln*, 12 id., 31, 32; *Newhall* v. *Vargas*, 13 Me., 93; S. C., 15 id., 374; *Rogers* v. *Thomas*, 20 Conn., 53; *Jordan* v. *James*, 5 Ohio, 88.) The vendor may sue for the price of the goods, notwithstanding he has stopped them *in transitu*, provided he is ready to deliver them on demand and payment. (*Kymer* v. *Sewercross*, 1 Camp., 109; 2 Kent's Com., 541; *Harris* v. *Pratt*, 17 N. Y., 263; *Litt* v. *Cowley*, 7 Taunt., 169; *Holst* v. *Pownal*, 1 Esp., 240; *Newhall* v. *Vargas*, 7 Me., 93; *Mottram* v. *Hyer*, 5 Denio, 629; *Oppenheim* v. *Russell*, 3 B. & P., 42; Pars. on Cont., 596, 631.) Defendant never released Babcock, but could, even at law, have recovered the residue of his debt. (*Home Ins. Co.* v. *Watson*, 59 N. Y., 390; *Bliss* v. *Schwartz*, 65 id., 444; *Bunge* v. *Koop*, 48 id., 225.)

*Julien T. Davis*, for respondent. Defendant's rights in the policy in suit are those of an assignee. (*Greefield* v. *Mass. Mut. Ins. Co.*, 47 N. Y., 430; *Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 id., 391; *Mallory* v. *Travelers' Ins. Co.*, 47 id., 52.) The plaintiff was entitled to the relief of an accounting with the defendant. (*Holland* v. *Smith*, 6 Esp., 11; *Lea* v. *Hinton*, 19 Beav., 324; 3 Big. Ins. Co., 88; *Morland* v. *Isaac*, 20 id., 389; 2 id., 414; *Drisdale* v. *Pigot*, 8 DeG., McN. & G., 546; *Courtney* v. *Wright*, 2 Gifford, 337; 3 Big. Ins. Co., 98; *Bruce* v. *Gardner*, 8 R. Eq. Cases, 430; *Knox* v. *Turner*, 9 id., 155.) Upon the accounting between plaintiff and defendant, the defendant was properly denied any credit by reason of the two elder notes, because they had been paid. (*Stilwell* v. *Mut. Life Ins. Co.*, 72 N. Y., 385; *Potter* v. *Carpen-*

*ter*, 71 id., 74; *Hays* v. *Miller*, 70 id., 112; Pollock on Contracts [2d ed., London, 1878], 164, 165; *Foster* v. *Dawber*, 6 Exch., 839; S. L. C., 433, *et seq.; Camber* v. *Ware*, 555.) The indebtedness of C. A. Babcock & Co., for the cargo of the schooner "Hepzibah," was canceled by its stoppage *in transitu.* (*Clay* v. *Harrison*, 10 B. & C., 106; *Langford* v. *Tiler*, 3 Salkeld, 113; Bell's Commentaries on the Law of Scotland, vol. 1, p. 231 [5th ed.]; *The Constantia*, 6 Rob. Ad., 321; *Jenkins* v. *Wyborn*, 8 Scott's N. R., 505; *McEdward* v. *Smithy*, 2 H. L. C., 309, 328; *Gibson* v. *Carruthers*, 8 M. & W., 321, 335; *Jaffray et al.* [*Stein's Creditors*] v. *Allan*, 3 Paton As. Cases, 191; 2 Kent's Commentaries, 541.) No estoppel could arise upon the statement by Babcock, of his opinion on a matter of law, under the circumstances existing in this case. (*Bush* v. *Hewett*, 4 N. Y. Leg. Ob., 384; *Moore* v. *Hitchcock*, 4 Wend., 293; *May* v. *Coffin*, 4 Mass., 347; *Warder* v. *Tucker*, 7 id., 449; *Freeman* v. *Boynton*, 7 id., 433; *Solomon* v. *Solomon*, 2 Ga., 30.)

CHURCH, Ch. J. The finding of the trial judge that the policy was taken out and delivered to the defendant as collateral security for the payment of the indebtedness of Babcock & Co. to him was warranted by the evidence. No other conclusion could be arrived at, and the evidence is substantially undisputed.

Some years afterwards Mr. Babcock expressed a desire not to be regarded as having an interest, and stated that the entire interest was in the defendant; but I do not think that this expression, under the circumstances, would have the effect of a release, or create an *estoppel.* There is no dispute that at the time the policy was taken out, there was an indebtedness in favor of the defendant against Babcock & Co., evidenced by two notes, amounting to $4,678.48. The policy was issued in February, 1870, and it is claimed and found that in April, 1870, these notes were compromised and settled, and that the defendant received from one Wheel-

right, on behalf of Babcock & Co., $925 in money, in full satisfaction and discharge of said indebtedness, and delivered and surrendered said notes to him, and that they were afterwards delivered up to Babcock & Co., who destroyed and canceled them. Wheelright testified that he purchased the notes of the defendant, and paid his own money, and delivered them to Babcock & Co. upon being repaid that amount and his expenses. In either view we think the debt was discharged. It was an executed accord. Nothing remained executory, and it operated as a full satisfaction. A mere promise to accept less than the full amount of a debt although the sum promised has been paid has been held not sufficient; but when the security has been surrendered, or some act done of a like nature, there is no reason in law or morals, why the party should not be bound. (*Kromer* v. *Heim*, 75 N. Y., 574.)

It may be that the defendant intended to hold the policy of insurance to indemnify him for the deficiency, but there was no agreement to that effect, and the defendant's letters indicate that he had regarded the debt fully released and canceled. The defendant claims also to hold the policy as security for the balance of an additional indebtedness of $1,226.44 and interest, after applying the proceeds of a cargo of coal, the finding in respect to which is here inserted : "*Fourth*. On the 15th day of November, 1869, the defendant sold a cargo of coal to said Charles A. Babcock & Co., and took a note in payment therefor of $1,226.44, due March 15, 1870 ; the said last-mentioned cargo of coal was shipped to said Charles A. Babcock & Co., by the schooner Hepzibah, on or about the 21st day of February, 1870, the the defendant through his agent, Edward Gullager, stopped the said last-mentioned cargo of coal *in transitu*, took possession thereof and disaffirmed the contract of sale therefor, and on the 4th day of May, 1870, sold the said last-mentioned cargo of coal to one E. S. Farrar." If this finding can be sustained as a finding of fact, it disposes of any claim for the debt. If the disaffirmance of the contract of sale of

the coal depends as matter of law upon the stoppage of the coal *in transitu,* then a more difficult and doubtful question is presented. Every intendment is in favor of the findings of fact, and findings may be implied if warranted by the evidence to sustain a judgment. The evidence as to the stoppage of the coal, as to the possession of the defendant, and the sale thereof by him does not present the facts as clearly as would be desirable upon this question. If the defendant took possession of the coal in the exercise of the right of stoppage *in transitu,* and sold the same without notice to Babcock & Co., and without their consent, and especially before the debt was due, an inference of an intention to disaffirm the contract of sale might be drawn, because upon the theory that this right is to enforce a lien, as claimed by the defendant, he must hold the property until the expiration of the credit, and be able to deliver it upon payment of the price, and the vendee has the right to pay the price, and take the property. According to that theory the credit is not abrogated, nor the sale, but the vendor is permitted to re-take the possession of the property, and hold it as security until the price is paid. If not paid at the time stipulated the vendor in analogy to other cases of lien, may sell the property upon giving notice.

The general rule upon the theory of a lien, must be that the vendor having exercised the right of stoppage *in transitu,* is restored to his position before he parted with the possession of the property. The property is vested in the vendee, and the vendor holds possession as security for the payment of the purchase-price. If therefore the defendant sold the coal without notice or consent, or if with consent of the vendees with the understanding that the sale was to be deemed rescinded the finding would be justified, and the defendant would have no claim upon this note.

The coal was sold to one Farrar, and a bill of sale thereof made by the defendant, and he received the purchase-money. The coal was sold, and the bill of sale and payment were not made until April, after the note became due, and there is

some conflict in the evidence whether it was made with the knowledge or consent of Babcock & Co., or not.

As to the legal question, although the right of stoppage *in transitu* has been recognized in England for nearly two hundred years, there is great confusion in the books as to the origin of the right, and the principles upon which it is founded. As late as 1841 LORD ABINGER said, that "although the question of stoppage *in transitu* had been as frequently raised as any other mercantile question within the last hundred years, it must be owned that the principle on which it depends has never been either settled or stated in a satisfactory manner.

"In courts of equity it has been a received opinion that it was founded on some principle of common law. In courts of law it is just as much the practice to call it a principle of equity which the common law has adopted."

Mr. Parsons, in his work on Admiralty, says, there are three ways, in either of which it might be supposed that the law of stoppage entered into the law of England. One, that it is based upon the civil law by which, in case of a sale, the property does not pass to the buyer until he has possession of the goods. It would follow that the seller would continue the owner until they reach the buyer, and that, by the insolvency of the latter, the goods would remain the property of the former. By the common law a sale does of itself pass the property to the buyer, without delivery. Another way is by implying a right of rescinding the contract of sale in case of insolvency, and that the act of stoppage was an exercise of that right, and a third way is by implying constructive possession in the seller for the purpose of a lien, to be enforced by the act of stoppage, or, in other words, that this right is an enlargement of the common law right of lien. (Parsons on Admiralty, 479.)

The rule seems not to have been settled in 1842. PARKE, B., said : "What the effect of stoppage *in transitu* is, whether entirely to rescind the contract, or only to replace the vendor in the same position as if he had not parted with

the possession, and entitle him to hold the goods until the price be paid down, is a point not yet fully decided, and there are difficulties attending each construction."

Mr. Bell, in his Commentaries on the Law of Scotland, favors the doctrine of rescission. He says: "Although there are many difficulties either way, it appears, on the whole, most consistent with the great lines of this doctrine of stoppage *in transitu*, that the seller's security over the goods sold, though perhaps in a large sense of the nature of a lien, is given by equity originally on the condition that the seller shall take back the goods, as if the contract were *ab initio* recalled."

There are some other authorities favoring the same view, and there are others that favor the theory of a lien. (*Feise* v. *Wray*, 3 East, 93; *Ex parte Gwynne*, 12 Vesey, Jr., 379; 6 East, 21, note.)

Mr. Parsons says that the earlier English cases sustain the doctrine of a lien, and intimates that later authorities changed the ground to that of rescission, but that the latest returned to the original doctrine. (Parsons on Admiralty, 481.) Whatever uncertainty there may be as to the rule in England, the decisions in this country are quite preponderating in favor of the theory of a lien. (*Rowley* v. *Bigelow*, 12 Pick., 307; *Stanton* v. *Eager*, 16 id., 467–475; *Arnold* v. *Delano*, 4 Cush., 33, 39; *Newhall* v. *Vargas*, 13 Maine, 93; S. C., 15 id., 314, and cases cited; *Rogers* v. *Thomas*, 20 Conn., 53; *Ellis* v. *James*, 5 Ohio R., 88–98; *Harris* v. *Pratt*, 17 N. Y., 263.) The elementary writers favor the same view. (2 Kent's Com., 541; Parsons Ad., 483; Parsons on Contracts, 598.) The question has never been, that I am aware, definitely decided in this State. As an original question the doctrine of rescission commends itself to my judgment as being more simple, and, in most cases, more just to both parties than the notion that the act of stoppage is the exercise of a right of lien, but in deference to the prevailing current of authority, I should hesitate in attempting to oppose it by any opinion of my own, and for that reason

I do not deem it necessary to state the grounds which influence my judgment.

It is found as a fact that the policy was delivered to the defendant as collateral security for the payment of the first two notes referred to only, " and that the defendants never acquired or had any interest in said policy or in the moneys to accrue or become payable thereon, except as a creditor of the said firm, and to the extent of his claim upon the aforesaid two notes against the said firm." The evidence justified this finding. The letter of the defendant of March 1, 1876, shows that he did not then suppose that he had any legal indebtedness against Babcock & Co. At the time the policy was issued the cargo of coal for which the last note was given was in possession of the defendant as he claimed, and had not been disposed of, so that the balance, even if Babcock & Co. were liable for it, could not then be known, and in March after, in a letter to the defendant, introducing Mr. Wheelright, Babcock & Co. say : " We will avail ourselves of the opportunity to have him arrange for the settlement of your claim against us, leaving in abeyance the cargo of Hepzibah, and the note given in settlement of the same."

The testimony of the insurance agent is to the effect that the policy was delivered to secure a fixed indebtedness, which could only refer to the first two notes. We are of opinion therefore that the defendant has no lien upon this money to secure the balance of the note given for that cargo of coal, even if Babcock & Co. are liable for it.

It follows that the judgment must be affirmed.

All concur, except Earl, J., dissenting.

Judgment affirmed.