JOHN FLYNN AND OTHERS, APPELLANTS, v. EDWIN C. LEDGER, AS ASSIGNEE, ETC., OF SIMON BELL, RESPONDENT.

*Sale of goods — rescission of the contract by letters — an assignee for the benefit of creditors acquires only the title which the assignor possessed at the time of the assignment — effect of charging goods to a party.*

This action was brought by the plaintiffs, merchants doing business in Pittsburg, Penn., to recover the value of a quantity of glass chimneys which were shipped by railroad on April 12, 1886, to the defendant's assignor, Simon Bell, a merchant then doing business in the city of Albany, pursuant to an order made by him on April eighth. The chimneys arrived in Albany on April sixteenth. Bell, who had not received the goods or paid the charges, having discovered, on April nineteenth, that he had become insolvent, wrote to the plaintiffs that he was not in condition to receive them, and offered to tell the plaintiffs how to dispose of them in Albany, the letter being mailed on that day. On April twenty-second an answer to the letter was mailed by the plaintiffs at Pittsburg, directing Bell to sell the goods and give them the name of the party to whom the sale was made, and suggesting that he, himself, might be able to take them "after you get matters fixed up," the answer being received on April twenty-fourth. On April twentieth, Bell made a voluntary assignment, for the benefit of his creditors, to the defendant, who, on April twenty-sixth, took the goods from the railroad company and paid the charges thereon.

*Held*, as the goods were in the custody of the railroad company, and the charges remained unpaid at the time at which the letter of the plaintiffs accepting the offer made by Bell to rescind the contract was mailed, and the assignment had not been made when such offer was made by Bell, that the sale was rescinded.

That the assignee acquired no title superior to that which Bell possessed at the time the assignment was executed.

*It seems*, that if Bell had made a sale of the chimneys to a *bona fide* purchaser for value, a very different question would have been presented.

That the fact that the plaintiffs charged the price of the chimneys to the defendant, as assignee, after they were informed that he had taken possession thereof, could not be regarded as amounting to a consent, on their part, that the chimneys should be considered a part of the assets under the assignment.

APPEAL by the plaintiff from a judgment entered in favor of the defendant, after a trial at the Albany Circuit by the court without a jury.

*A. Vanderzee*, for the appellants.

*Eugene Burlingame*, for the respondent.

INGALLS, J. :

This action was brought by the plaintiffs against the defendant, as assignee of Simon Bell, under a voluntary assignment for the benefit of creditors, to recover the value of a quantity of glass chimneys which came to the possession of the defendant under the following circumstances : On the 8th day of April, 1886, Simon Bell, who was a merchant doing business in the city of Albany, ordered from the plaintiffs, who were doing business at Pittsburg, Pa., a quantity of glass chimneys. The chimneys were shipped by railroad on the 12th day of April, 1886, and arrived in Albany April 16, 1886. Bell was notified that the goods were at the depot at Albany, but allowed them to remain there, and did not receive the same, or pay the charges thereon. On the 19th of April, 1886, having discovered that he had become insolvent, he addressed to the plaintiff's the following letter :

"SIMON BELL,

"*Importer and Dealer in China, Glass and Earthenware, No. 96 and 98 South Pearl Street, Albany, N. Y.*

"ALBANY, N. Y., *April,* 19, 1886.

"*Excelsior Glass Company :*

"DEAR SIRS. — Your chimneys have just arrived, but I am not in condition to receive them as I am in trouble. If you are not too angry with me I can no doubt tell you how to dispose of them in Albany. I am awfully sorry to cause you any trouble but I could not help it.

"Truly yours,

"S. BELL."

This letter was mailed to the plaintiffs the day of its date. On the 22d day of April, 1886, an answer to the above letter was mailed by plaintiffs at Pittsburg addressed to Simon Bell, which was as follows : "In reply to yours of the nineteenth instant, would say that we are not angry with you, in fact we are under many obligations for protecting our interest in this matter. You sell the goods, give us the name of the party to whom you make sale, and we will make invoice to them; or, perhaps, after you get matters fixed up you can take the goods yourself." This letter was received by Mr. Bell on the 24th of April, 1886. On the 20th day of April,

1886, Bell made a voluntary assignment to the defendant, for the benefit of creditors. On that day the assignee took actual possession of the assigned property, but did not take actual possession of the chimneys on that day, but they remained in the custody of the railroad company until the twenty-sixth day of April, when the defendant went, and took the chimneys, and paid the charges thereon. On the 27th of April, 1886, Mr. Bell addressed to the plaintiffs the following letter :

"OFFICE OF SIMON BELL,

" *Importer and Dealer in China, Glass and Earthenware,
No. 96 and 98 South Pearl Street.*

"ALBANY, N. Y., *April* 27, 1886.·

" *Excelsior Flint Glass Company :*

"DEAR SIRS.— Yours of the twenty-second is received, and would have been answered sooner if I had good news to send, but the news is bad, the lawyer for the assignee compelled him to put your goods in with the assets, and told him he might get into trouble if he did not, as they were, beyond any doubt, part óf my assets, being in Albany nearly a week before the assignment. The whole thing is out of my hands, and I am unable to do as I would like. This trouble came on by a sharp trick of a well known glass man. I will lose heavily by his trickery.

"Respectfully yours,
" SIMON BELL."

The letters of the nineteenth and twenty-second April were received in the due course of mails between Albany and Pittsburg. On the 19th day of April, 1886, the plaintiffs and Simon Bell were authorized to rescind the contract of sale. Bell had paid no part of the price of the chimneys, nor had he paid the charges thereon, nor had he assumed to control the same. He had ascertained that he was insolvent, a fact not known to the plaintiffs when they shipped the goods, as their first information in regard to his embarrassed circumstances was probably derived from his letter of the nineteenth April. The chimneys were in the custody of the railroad company and the charges remained unpaid, and the assignment had not been executed when the last mentioned letter was mailed to the plaintiffs, and the title to the chimneys had not, at that time, certainly, vested

in the defendant under the assignment, which was not executed until the day following. The plaintiffs promptly accepted the offer of the purchaser Bell, as appears by their letter of the twenty-second of April, which was received by Mr. Bell on the twenty-fourth of April. In Parsons on Contracts (vol. 2, p. 190 [4th ed.]), the author remarks: "The defendant may rely on the fact that the contract has been rescinded, and this may have been done by *mutual consent*, or by the plaintiff who had the right to do so, or by the defendant if he had the right. Whichever party has the right to rescind must do it *within a specified time*, if there be such a time, *or otherwise within a reasonable time*." We think the plaintiff's contention finds support from the following cases. (*Harris* v. *Pratt*, 17 N. Y., 250; *Babcock* v. *Bonnell*, 80 N. Y., 244.) Manifestly the facts herein present a case somewhat exceptional. Ordinarily one party to the contract insists upon performance thereof, but in this case Mr. Bell, prompted by an honest motive, mailed a letter which contained a proposed recision of the contract, which was intended for the benefit of the plaintiffs, and they promptly accepted the same and informed Bell thereof by letter, which was received by him in the due course of the mail, and which was previous to the time the assignee took the chimneys from the railroad company. If Bell had made a sale of the chimneys to a *bona fide* purchaser for value, a very different question would be presented. The defendant, as assignee under the voluntary assignment for the benefit of creditors, acquired no title superior to that which Bell possessed at the time the assignment was executed.

The mere fact that the plaintiffs charged the price of the chimneys to the defendant, as assignee, after they were informed that the defendant had taken possession thereof, cannot reasonably be regarded as amounting to a consent on their part that the chimneys should be considered a part of the assets under the assignment. The circumstances rather favor the view that the plaintiffs intended to hold the defendant liable for the value of the chimneys, upon the assumption that he had taken the same without authority, and therefore became liable for their value. We can hardly infer from the facts, that the plaintiffs intended to contribute to the assets for the benefit of the creditors generally, to the value of the chimneys, and then accept a *pro rata* share under the assignment. The strong equity which exists

in favor of the plaintiffs under the facts of this case entitle them to all the protection which the court can properly extend to them. They are chargeable with no improper conduct, and were not guilty of laches, they acted promptly upon the suggestion of Mr. Bell, and did all that they could to preserve their rights.

The judgment should be reversed and a new trial ordered, with costs to abide the event of the action.

LEARNED, P. J. and LANDON, J., concurred.

Judgment reversed, new trial granted, costs to abide event.