### SHEPPARD v. NEWHALL et al.

#### (Circuit Court of Appeals, Ninth Circuit. January 30, 1893.)

#### No. 41.

1. SALE—STOPPAGE IN TRANSITU—NATURE OF RIGHT.

The true nature and effect of the right of stoppage in transitu is not to rescind the sale, but to enable the seller to enforce his lien for the price, and to that end he is entitled to retake possession, by suit if necessary, and he must then hold the goods until the expiration of the credit, so as to be able to deliver them on payment of the price.

2. SAME—WHEN RIGHT OF STOPPAGE ENDS.

When goods sold have left the hands of the carrier, reached their destination, and the purchaser has disposed of them to one who gives a bond for the payment of the customs duties, and deposits them in his own name in a bonded warehouse, the seller's power to exercise the right of stoppage in transitu is gone.

3. SAME—BILL OF LADING—INDORSEMENT.

An ocean bill of lading was drawn to "E. H., or assigns." The drawee was a railroad agent at New York, who attended to the transshipment of goods, and he shipped the goods to San Francisco, and transmitted the bill of lading to the purchaser without indorsement. The purchaser indorsed the bills, and delivered them as security for advances. Before the arrival of the goods the purchaser became insolvent, and the shipper gave notice of stoppage in transitu. *Held*, that the shipper's right to retake possession of the goods was unaffected by the purchaser's indorsement and transfer of the bill of lading, as, "E. H." having failed to indorse them,

no title to the goods passed. 47 Fed. Rep. 468, reversed. St. Paul Roller-Mill Co. v. Great Western Despatch Co., 27 Fed. Rep. 434, followed.

**4. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.**

In an action to recover personal property, an objection that the complaint alleged that plaintiff was owner thereof, whereas the proof showed that he was entitled to possession under a vendor's lien, cannot be raised for the first time in the appellate court.

In Error to the Circuit Court of the United States for the Northern District of California.

Action by Winter Byard Sheppard, doing business under the firm style of Sheppard & Co., against Edwin W. Newhall and Walter S. Newhall, doing business under the firm style of Newhall's Sons & Co. to recover possession of personal property. Judgment for defendants. 47 Fed. Rep. 468. Plaintiff brings error. Reversed.

Statement by ROSS, District Judge:

This is an action brought to recover the possession of 12 cases of merchandise, consisting of woolen goods, etc., or their value, manufactured in and shipped from England by the plaintiff in error, who was also plaintiff in the court below, on an order given by Robert Gordon, a tailor doing business in the city of San Francisco, Cal., under the name of Gordon Bros. The goods were shipped in three lots,—six cases, numbered, respectively, 99 to 104, both inclusive, covered by one ocean bill of lading; two cases, numbered 105 and 106, respectively, covered by another ocean bill of lading; and four cases, numbered, respectively, 107 to 110, both inclusive, covered by a third ocean bill of lading. The goods were shipped by way of New York, and they were, by the bill of lading, made deliverable to E. Hawley, or assigns. Hawley was a railroad agent in New York, who attended to the transshipment of goods at that point. He received the goods in question from the ship at New York, and shipped them by rail to San Francisco, and, without indorsing the bills of lading, transmitted them to Gordon, at San Francisco, together with the annexed invoice of the goods, and the inland transportation entry and railroad receipt. On receipt of the bills of lading and accompanying papers, Gordon indorsed and delivered them to the defendants as security for certain moneys advanced to him at the time on the strength of such security, and also as security for other and larger advances that defendants in error had previously made to him, and which had not been repaid. All of the goods arrived in San Francisco, and those contained in cases 99 to 106 inclusive, were, prior to October 13, 1890, entered in the customhouse at San Francisco, and deposited in a bonded warehouse by the defendants in error, in their name, to await the payment of duties thereon. On October 13, 1890, Gordon became insolvent. On October 18, 1890, and before the cases numbered, respectively, 107 to 110, inclusive, had arrived in San Francisco, the plaintiff in error gave to the railroad company having the goods in transit notice of his claim and right of stoppage in transitu. On the arrival of these four cases in San Francisco, which was prior to October 30, 1890, the defendants in error paid the duty on them, and took them into their possession. On October 30, 1890, plaintiff in error also served on defendants in error a notice of his claim of right to stop the goods in transit. On November 8th following, plaintiff tendered to the defendants in error, in lawful money of the United States, $3,536.47, which he then supposed was the amount, with interest, that they had advanced to Gordon, and paid out on the goods in question, at the same time offering to pay them the exact amount, with interest, that they had so paid, if the amount tendered was not correct; both of which offers were by the defendants in error refused; and they also refused to state the amounts they had advanced and paid out on the goods, and also refused the demand thereupon made upon them by the plaintiff in error for the possession of the property. The plaintiff then commenced the present suit to recover from the defendants possession of all of the goods, or their value, basing his right to do so solely upon the allegation that on November 8, 1890, he was the owner of the goods. The suit having resulted in a

judgment adverse to him in the court below, he brought the case here by writ of error.

The first assignment of error grows out of a motion made by the plaintiff in advance of the trial for an order on the defendants to give the plaintiff an inspection and copies of certain accounts and papers, which in its scope went beyond the matters bearing upon the issues in the case. The application was made pursuant to the provisions of section 1000 of the Code of Civil Procedure of the state of California, which reads as follows: "Any court in which an action is pending, or a judge thereof, may, upon notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy, of entries of accounts in any book, or of any document or paper, in his possession or under his control, containing evidence relating to the merits of the action or the defense therein. If compliance with the order be refused, the court may exclude the entries of accounts of the book or the document or paper from being given in evidence, or, if wanted as evidence by the party applying, may direct the jury to presume them to be such as he alleges them to be; and the court may also punish the party refusing for a contempt. This section is not to be construed to prevent a party from compelling another to produce books, papers, or documents when he is examined as a witness."

The court below granted the motion in so far as to allow the plaintiff an inspection and copies of (1) the original bills of lading covering the 12 cases of goods described in the complaint; (2) all accounts relating to moneys advanced upon the hypothecation of the 12 cases of goods; the court at the same time announcing that, should it appear at any time during the trial of the cause that the defendants were in possession of any books or papers material to the cause of the plaintiff, defendants would be required to produce them, and, if a production of such books or papers should make it proper to grant the plaintiff a postponement of the trial, such postponement would be ordered. In all other respects the motion was denied, to which ruling the plaintiff excepted. At the trial the defendants offered in evidence the three ocean bills of lading, with the accompanying papers, consisting of the invoice, inland transportation entry, and letter from Hawley, the consignee named in the bills of lading. To each of the bills of lading the plaintiff objected, on the ground that neither of them was indorsed by the consignee therein named. The court overruled the objection, and admitted the bills of lading in evidence, to which the plaintiff excepted. The ruling of the court in this particular is the basis of the 2d, 3d, 4th, and 5th assignments of error.

The witness E. W. Newhall, having testified, among other things, that the defendants, from and including August 20, to October 3, 1890, advanced to Gordon $14,500 on the security of different goods and bills of lading, was asked by counsel for the plaintiff, "What became of the goods pledged to you for advances up to October 3d, amounting to $14,500?" To this question counsel for defendants objected, on the ground that it was irrelevant, immaterial, and incompetent. The court sustained the objections, and the plaintiff reserved an exception. The witness was also asked by counsel for plaintiff, "On the 8th day of November, 1890, how much money was owing to you on these bills of lading covering the cases,—the subject-matter of this action?" Like objections of the defendants were sustained by the court, and the plaintiff excepted. These rulings are assigned for error in the sixth assignment.

Counsel for the plaintiff also moved the court to order the defendants to produce for his inspection their firm books, showing all transactions had with Robert Gordon, and the amounts realized from sales of pledged property, and the dates of the various receipts of money produced by such sales, for the purpose of ascertaining whether or not the advances theretofore made by the defendants to Robert Gordon, doing business as Gordon Bros., had not been repaid on or before the 8th day of November, 1890. This motion was denied by the court, and the plaintiff reserved an exception, and assigns the ruling for error in the eighth assignment.

Vincent Neale, for plaintiff in error.

Henry Ach, (Rothchild & Ach, on the brief,) for defendants in error.

Before McKENNA, Circuit Judge, and ROSS and KNOWLES, District Judges.

ROSS, District Judge, (after stating the case as above.) It is now well settled both in this country and in England that the true nature and effect of the right to stoppage in transitu is simply to restore the goods to the possession of the vendor, so as to enable him to exercise his rights as an unpaid vendor, not to rescind the sale. 2 Benj. Sales, (3d Ed.) pp. 1112–1115, and cases there cited. In California it is, in effect, so provided by statute. Civil Code Cal. § 3080. To enforce his rights, the vendor must be, and is, entitled to retake the possession of the property, and must hold it until the expiration of the credit, so as to be able to deliver it upon the payment of the price; for up to that time the vendee has the right to pay the price, and take the property. Babcock v. Bonnell, 80 N. Y. 244. If not paid at the time stipulated, in what way the vendor should proceed to enforce his lien it is not here necessary to decide. Courts of equity entertain jurisdiction for the enforcement of such liens, and there are also statutory provisions bearing on the subject. 2 Benj. Sales, (3d Ed.) pp. 1113, 1114, and cases there cited; Civil Code Cal. §§ 3076–3079, and cases cited in notes thereto. The right to retake possession of the property, where the right to stop it in transit exists, necessarily implies a right to maintain an action for its recovery, where resort to suit is necessary. In California the right to "resume possession" is given by statute. Section 3076 of the Civil Code reads:

"A seller or consignor of property, whose claim for its price or proceeds has not been extinguished, may, upon the insolvency of the buyer or consignee becoming known to him after parting with the property, stop it while on its transit to the buyer or consignee, and resume possession thereof."

In the present case it became necessary for the plaintiff to sue to regain possession of the property; and, in doing so, he alleged in his complaint, as amended, as the basis of his right to recover its possession, that he was the owner of the property on the 8th day of November, 1890, and that, the property having theretofore come into the possession of the defendants, plaintiff, on the day named, demanded its possession, which demand was refused by the defendants, who continued to withhold its possession from the plaintiff. The amended complaint contains no other allegation of the plaintiff's right to its possession than the allegation of ownership imports; and as the facts show that the plaintiff was not the owner of the property at the time stated in the complaint, or at the time of the institution of the suit, it is here urged for the defendants in error that the complaint, as amended, is insufficient to support a recovery by the plaintiff, even if a lien upon the goods in his favor exists. But this objection was not made in the court below, and it is not permissible to hold in ambush a point of variance that does not go to the merits of the controversy between the parties, and raise it for the first time in the appellate court. A presumption of the right to the immediate possession of property flows from its ownership, and therefore the allegation contained in the amended complaint in the

present case of ownership in the plaintiff of the property in question was attended with that presumption. If the proof showed only a special interest in the plaintiff, inconsistent with its ownership, the objection should have been taken in the trial court, where the plaintiff would have had an opportunity to amend his pleading to conform to the proof, and thus have attained the end to be desired in all judicial proceedings,—an adjudication upon the merits of the controversy. The objection comes too late when made for the first time here.

When the goods included in cases numbered, respectively, 99 to 106, both inclusive, arrived in San Francisco, Gordon, the purchaser of them, went in person to the customhouse to enter them. There was at the time a regulation in force that the entry should not be made without producing or accounting for the original bill of lading. Gordon accordingly took with him to the customhouse Newhall, the holder of the original bills of lading, covering cases 99 to 106, who there produced them, and thereupon the goods were entered in the name of Gordon. A bond was then given for the payment of the duties, and the goods placed in a bonded warehouse, and a warehouse receipt therefor issued to Newhall. All of this was prior to the attempt on the part of the plaintiff in error to exercise the right of stoppage in transitu. In respect to these goods, we have no difficulty in holding that the transit had ended before the attempt was made to stop them. The goods were sold to and intended for Gordon, doing business in San Francisco. They had left the hands of the carrier, and the place of their deposit was in no way connected with their transmission to the purchaser. They had reached their destination, and the purchaser had, by his personal and affirmative act, disposed of the goods, and his assignee had given bond for the payment of the duties upon them, and deposited them in his own name in a bonded warehouse, for which he held the warehouse receipt.

But in respect to the goods contained in cases numbered, respectively, 107 to 110, inclusive, the case is different, These were still in the hands of the carrier when the plaintiff in error gave notice of and asserted his right of stoppage in transitu, and it becomes necessary, therefore, to consider the objections presented by the fifth assignment of error to the introduction in evidence of the bill of lading covering those cases. The bill of lading was drawn, as has been said, to "E. Hawley, or assigns." It was not indorsed by Hawley. Consequently, it is urged by plaintiff in error, no title passed to defendants. It is provided by section 2127 of the Civil Code of California as follows:

"All the title to the freight which the first holder of a bill of lading had when he received it passes to every subsequent indorsee thereof, in good faith, and for value, in the ordinary course of business, with like effect and in like manner as in the case of a bill of exchange."

And by section 2128 it is declared:

"When a bill of lading is made 'to bearer,' or in equivalent terms, a simple transfer thereof by delivery conveys the same title as an indorsement."

These sections, read together, as they must be, plainly declare that the title to goods described in bills of lading drawn to order passes by indorsement, drawn to bearer by delivery. There are many cases which hold that the delivery of a negotiable or quasi negotiable instrument, like a bill of lading drawn to order, will vest title without indorsement, as against the person who made delivery without such indorsement; for he is justly held estopped from setting up his own mistake, omission, or fraud to defeat the effect of his own action. The case of St. Paul Roller-Mill Co. v. Great Western Despatch Co., 27 Fed. Rep. 434, referred to in the opinion of the court below, was a case of that character. There the bill of lading was drawn to the order of the shipper, which drew its draft at 15 days' sight, against the flour mentioned in the bill of lading, upon one Whitcomb, of Boston, and forwarded the draft, with the bill of lading attached, unindorsed, to the Tremont National Bank of Boston, for acceptance and collection. Upon Whitcomb's acceptance of the draft, the bank delivered to him the bill of lading, without indorsement, and he afterwards indorsed and transferred the bill of lading to the National Bank of Redemption, for an antecedent debt due from him to that bank. Afterwards, and before the flour arrived in Boston, the shipper, being informed of the insolvency of Whitcomb, notified the carrier not to deliver the flour to him or his assigns; but upon its arrival it was delivered to Whitcomb's assignee, and the shipper thereupon sued the carrier for its conversion. It was urged for the plaintiff that the bill of lading, running to the order of the shipper, and delivered to Whitcomb, without indorsement, carried on its face notice that he held it subject to equities between prior parties; but the court said that it was of no importance that it was delivered unindorsed; that it was the intention of the shipper that its agent (the Tremont Bank) should deliver the bill of lading on acceptance of the draft. It would have been manifestly unjust to have permitted the shipper to take advantage of his own failure to indorse the bill of lading which he delivered, with the intention of carrying the right to the property covered by it. But that is by no means the present case. Here the bill of lading was not drawn to the order of the shipper, the plaintiff in error, but, in effect, to the order of E. Hawley, by whom it was delivered without indorsement, and the omission of which the plaintiff seeks to avail himself, in protection of his lien for the unpaid purchase price of the goods, is not his own omission, but that of Hawley. The right of the plaintiff in error to stop the goods in transitu upon discovering the insolvency of the vendee was perfect, not only as against the vendee, but as against all others, except a purchaser for value, taking by indorsement of the bill of lading, in the usual course of business, and without notice. Civil Code Cal. § 2127, supra; Stanton v. Eager, 16 Pick. 476; Akerman v. Humphrey, 1 Car. & P. 56. At least one of these conditions is wanting in the present case, namely, the indorsement by the party in whose favor the bill was drawn. We are therefore of the opinion that the right of the plaintiff in error to retake possession of cases numbered 107 to 110, inclusive, for the protection and enforcement of his vendor's lien, was unaffected by

the transfer of the bill of lading covering them to the defendants. From these views it becomes unnecessary to consider the remaining assignments of error. Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.