McGill v. Chilhowee Lumber Co.

MINNIE T. MCGILL v. CHILHOWEE LUMBER CO. et al.

(*Knoxville.*   September Term, 1903.)

1. **CONVERSION.**   Entitles owner to market value of property at time and place converted.

   The owner of property which has been converted and appropriated by another is clearly entitled to recover the market value thereof at the time and place of conversion and appropriation. (*Post, pp.* 558-559.)

2. **SAME.**   Same.   Owner not taxed with costs and expenses of removal and sale of converted property, when.

   The owner, whose property has been wrongfully appropriated, converted, and sold, cannot be onerated with the costs and expense of the removal and sale thereof, especially where it is not shown that there was no market for the property at the place of conversion.   (*Post, p.* 559.)

   Case cited and approved:   Knoxville Electric Co. v. East Tennessee Light & Power Co.

3. **STOPPAGE IN TRANSITU.**   Does not rescind sale nor divest title out of purchaser; seller's rights.

   The seller's exercise of the right of stoppage *in transitu* does not operate to rescind the sale, nor to divest title out of the purchaser, but merely to restore to the seller the right of possession and lien, which may be enforced for the payment of the purchase price.   (*Post, pp.* 559-561.)

   Cases cited and approved:   Shepherd v. Newhall, 7 U. S. App., 44, 4 C. C. A., 352, 54 Fed. Rep., 306; Cross v. O'Donnell, 44 N. Y., 661; Rolwey v. Bigelow, 12 Pick. (Mass.), 307.

4. **LIEN.**   Of seller is dependent upon possession, but is not lost by wrongful dispossession of the property.

   While the seller's lien is dependent upon possession, yet it is not extinguished by a wrongful and fraudulent dispossession of the

McGill v. Chilhowee Lumber Co.

property. The change of possession must be voluntary to constitute a waiver of the lien. (*Post, pp.* 561-563.)

Case cited and approved: Caldwell v. Tutt, 10 Lea, 259.

5. **CONVERSION.** Of part of lumber is not a conversion of the remaining part left untouched.

Where a party takes and converts part of a quantity of lumber, he is not liable for the loss by flood of the remaining part not taken by him, and over which he exercises no right of ownership because he has not converted such remaining part. (*Post, pp.* 563-564.)

---

## FROM LOUDON.

---

Appeal from the Chancery Court of Loudon County.—HUGH G. KYLE, Chancellor.

ROGERS & ROGERS, for complainant.

YOUNG & YOUNG, for Hutchison Co.

TEMPLETON, LINDSAY & TEMPLETON, for Youmans Lumber Co.

PICKLE & TURNER, for Southern Brass & Iron Co.

J. E. CASSADY, for Baugher.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This record presents a general creditors' bill to wind up the affairs of the Chilhowee Lumber Company as an insolvent corporation. The bill was sustained as a general creditors' bill, and a receiver appointed to take charge of the assets of the insolvent corporation.

The questions now presented to this court arise on the appeal of the Youmans Lumber Company, which is asserting a preferred claim for the value of about 29,000 feet of oak lumber, which it claims was converted by the Chilhowee Lumber Company and the Southern Brass & Iron Company. The facts in regard to this controversy, as found and established by the court of chancery appeals, are as follows:

"The Youmans Lumber Company sold the lumber in question (two car loads) to the Chilhowee Lumber Company, one car being shipped on July 6 and one on July 8, from La Follette, Tennessee, consigned to the Chilhowee Lumber Company at Lenoir City, Tennessee. Before the lumber reached its destination, the Chilhowee Lumber Company had become financially embarrassed, and the Youmans Lumber Company stopped the lumber in transit, took possession of it at Lenoir City, and, by permission of one J. W. Baugher, unloaded it upon his premises, which were located within sixty or one hundred feet of the millyards of the defendant company. At this time the defendant company was in the hands of a receiver appointed under another bill filed prior to the bill in this case. . . . There is no question at all but that the lumber was sold by the Youmans Lumber

Company to the Chilhowee Lumber Company; that it was shipped to Lenoir City; that it was stopped *in transitu;* that the cars were unloaded by the Youmans Lumber Company, who took possession of the lumber, and, by permission of Mr. Baugher, the lumber was piled on his lot, and did not then pass into the possession of the Chilhowee Lumber Company. . . . As a matter of fact, this lumber remained on the yard where Mr. Youmans had placed it, without any authority, so far as this record shows, from Mr. Youmans, or the Youmans Lumber Company, or any one else, to take charge of it or remove it. . . . It appears, however, that the agents of the Chilhowee Lumber Company went to Mr. Baugher, upon whose yard the lumber was left, and told him that matters had been arranged, and that the lumber belonged to the Chilhowee Lumber Company, and thereupon some of the lumber (one-fourth) was taken and used by the Chilhowee Lumber Company.

"Subsequently, on the nineteenth of September, Mr. Peter Blow, representing the Southern Brass & Iron Company, having a claim or account for the sum of sixty-one dollars and forty cents for goods sold to the Chilhowee Lumber Company, which was overdue and unpaid, went down to Lenoir City to collect his claim. . . . Mr. Blow demanded payment of his account, and, after trying to put him off, Mr. Morrow, the secretary and treasurer of the Chilhowee Company, finally proposed to sell Mr. Blow some lumber in payment of the account, and showed him this lumber, which was then

piled upon the yard of Mr. Baugher. Mr. Blow agreed to take the lumber for his debt, but at the request of Mr. Morrow agreed to leave the lumber where it was until the first of October, and agreed that Mr. Morrow or the Chilhowee Lumber Company might, by paying some sixty-one dollars and forty cents by the first of October, repurchase or redeem the lumber. A contract was entered into between the parties embodying the features just stated, but was not acknowledged or registered. . . . The lumber was still on the lot of Mr. Baugher, and was pointed out, and by agreement of the parties was placed in possession of J. W. Baugher, trustee for the Southern Brass & Iron Company, and Mr. Baugher assumed control of the lumber."

It will be observed that all this was done without the knowledge or consent or participation of the Youmans Lumber Company. It appears further that subsequently the original bill in this case was filed, and the receiver appointed. Soon thereafter, the receiver having told Mr. Blow that he could not redeem the lumber, the latter ordered the lumber shipped to Knoxville, where about 10,000 feet of it was received and sold by Mr. Blow for the sum of $103.98, out of which he paid $26 freight and other expenses of shipment, including loading and unloading, amounting to $24, leaving net proceeds realized of $53.94. The balance of this lumber, estimated to be about 6,000 feet, was left upon the yard of Mr. Baugher at Lenoir City, the injunction having issued prohibit-

McGill v. Chilhowee Lumber Co.

ing its removal; and it was subsequently washed away by floods and lost.

The injunction referred to issued upon a petition filed by the receiver, alleging that the property belonged to the defendant corporation.   The Southern Brass & Iron Company answered the petition, and insisted that the lumber had been sold to it by J. W. Morrow, secretary and treasurer of defendant company, on September 19, 1901.   The Youmans Lumber Company intervened by petition, asserting a lien upon this lumber upon the ground that it had exercised its right of stoppage *in transitu,* and that it had been dispossessed of the lumber wrongfully.

The court of chancery appeals held as follows:

"Upon these facts we are of opinion and find that the lumber in question had been stopped *in transitu,* piled up upon the yard of Mr. Baugher by the Youmans Lumber Company, and had not been paid for by the Chilhowee Lumber Company; that subsequently the officers and agents of the Chilhowee Lumber Company wrongfully and without authority went upon the yard of Mr. Baugher, and by false representations assumed and took possession of said lumber, and did use up one-fourth of it in its mill; that subsequently Mr. Morrow, secretary and treasurer, acting for the Chilhowee Lumber Company, did sell or pledge and deliver to Mr. Baugher, acting as trustee for the Southern Brass & Iron Company, the remaining three-fourths of this lumber.   At the time of this transaction the Chilhowee Lumber Com-

pany was not the owner of this lumber, as it had never been legally delivered to it, and it therefore, in our opinion, had no right to execute the pledge for the sale and delivery of this lumber to the defendant Peter Blow for the Southern Brass & Iron Company."

Says that court: "We think the Southern Brass & Iron Company and Peter Blow are liable to the Youmans Lumber Company for the value of the lumber so taken. It appears that the amount of the lumber actually taken by the Southern Brass & Iron Company and Mr. Blow was worth the net amount realized, fifty-three dollars and ninety-four cents, and for this amount we think the Youmans Lumber Company is entitled to a decree against the Southern Brass & Iron Company and Peter Blow."

The Youmans Lumber Company complain of this part of the decree to the extent that the court of chancery appeals allowed a credit or reduction for expenses incurred by the Southern Brass & Iron Company in shipping this lumber from Lenoir City to Knoxville. The insistence made in this court on behalf of the Youmans Lumber Company is that, having found that complainants' lumber was wrongfully appropriated, the court of chancery appeals should not have allowed credit for any expenses incurred by the Southern Brass & Iron Company in taking possession of this property and shipping it away. The theory of the Youmans Lumber Company is that the Southern Brass & Iron Company should have been held

liable for the market value of the lumber appropriated and converted at Lenoir City.

We are constrained to hold that this assignment of error is well made. It was held by this court at the present term, in *Knoxville Electric Company* v. *East Tennessee Light & Power Company*, 82 S. W., —, that a litigant whose property is wrongfully attached cannot be adjudged liable either for costs of the receivership under which it was preserved or for a receiver's certificate issued for its exclusive benefit. Upon the same principle we are unable to see why a party whose property has been wrongfully appropriated and sold should be onerated with the costs and expenses of that sale. He is clearly entitled to recover the market value of the property at the time and place of the conversion. The court of chancery appeals did not find there was no market for this lumber at Lenoir City, and that on that account its value should be determined by the Knoxville market. It was therefore in error in not adjudging liability against the Southern Brass & Iron Company for the value of this lumber at Lenoir City.

The next assignment is that the court of chancery appeals erred in holding that the loss of 6,000 feet of lumber washed away by floods at Lenoir City must fall on the Youmans Lumber Company.

As already seen, one-fourth of the lumber belonging to the Youmans Lumber Company had been appropriated by the Chilhowee Lumber Company wrongfully, and it sold the remaining three-fourths of that lumber to

the Southern Brass & Iron Company. The latter company, under its purchase, removed one-half of the lumber, leaving deposited in the yard of J. W. Baugher about 6,000 feet. As found by the court of chancery appeals, this 6,000 feet of lumber was washed away by floods and high water, without any fault being especially attributable to any one.

The theory now advanced on behalf of the Youmans Company is that the legal title to this lumber had passed from the Youmans Company to the Chilhowee Company and from the Chilhowee Company to the Southern Brass & Iron Company, and that the loss should fall upon the latter company. It is insisted on behalf of the Youmans Company that when it exercised its right in stopping the lumber *in transitu* on account of the insolvency of the purchaser the effect of such stoppage was not to rescind the sale or interfere with the title, but simply to restore the seller his original lien to secure the payment of the purchase price. In Mechem on Sales, vol. 2, section 1612, it is said: "The effect of the exercise of the right of stoppage, as it seems now to be generally agreed on, is not to rescind the sale, but to restore the seller to his right of possession and lien. . . . The assumption of the lien, as has already been seen, does not of itself effect a rescission of the sale. The goods still remain the goods of the buyer until the seller has in some way foreclosed his right, and until that time the buyer may redeem them." *Sheppard* v. *Newhall,* 7 U. S. App., 544, 4 C. C. A., 352, 54 Fed., 306; *Cross* v. *O'Donnell,* 44 N.

Y., 661, 4 Am. Rep., 721; *Rowley* v. *Bigelow*, 12 Pick. (Mass.), 307, 23 Am. Dec., 607; 23 Am. & Eng. Encyc. of Law (2 Ed.), col. 23, p. 932.

It is true that the sale of this lumber by the Youmans Company to the Chilhowee Company was not rescinded by the seller's act in stopping the lumber in transit, but the title to the lumber was still in the Chilhowee Company, and the right of possession remained in the Youmans Company, until the purchase price was paid, and its lien thereby extinguished. It is insisted, however, by counsel for the Southern Brass & Iron Company, that this lien was absolutely dependent for its existence and enforcement upon the fact of the seller's retaining possession of the property, and, having lost its possession, the Youmans Company were not entitled to enforce the lien. "At most," it is said, "it could only enforce that lien upon the specific property involved, or its immediate proceeds, provided they could be followed and identified."

While it is true, as insisted by counsel, that the seller's lien is dependent upon possession, it is also true that it is not extinguished by a wrongful dispossession of the property. The court of chancery appeals has found as a fact that "the Chilhowee Lumber Company wrongfully and without authority went upon the yard of Mr. Baugher, and by false representations assumed to take possession of said lumber." Such a wrongful and fraudulent dispossession did not operate to extin-.

111 Tenn—36

guish the seller's lien. "The change of possession must be voluntary to constitute a waiver of the lien. Therefore, where such a change is effected by force or fraud, or without the consent of the lienholder, the lien is not thereby determined." Am. & Eng. Encyc. of Law (2 Ed.), vol. 19, p. 27; *Caldwell* v. *Tutt,* 10 Lea, 259, 43 Am. Rep., 307; Mechem on Sales, vol. 1, section 153.

It is also true that the Youmans Lumber Company was entitled to regain this possession from the wrongdoer. "So, if by artifice or evasion the buyer obtained possession of the goods, as upon a promise or understanding of immediate payment, which afterwards is evaded or denied, the seller, who has done nothing to estop himself or waive his right, may regain possession by virtue of his lien as against any one but a bona fide purchaser for value." Mechem on Sales, vol. 2, section 1490; Am. & Eng. Encyc. of Law (2 Ed.), vol. 19, p. 35.

The court of chancery appeals has found as a fact that the Southern Brass & Iron Company was not an innocent, purchaser, and this exception to the rule is therefore eliminated from this case. In respect of the remedy of the lienholder to recover the possession of this property, the law is thus stated, viz.:

"If the property is wrongfully taken from the custody of the lienholder by a third person, the lienholder's remedy is by an action to recover the possession or for a wrongful conversion. In the latter action the measure of damages is the amount of the lien, not exceeding the

McGill v. Chilhowee Lumber Co.

value of the property." Am. & Eng. Encyc. of Law (2 Ed.), vol. 19, p. 35.

The court of chancery appeals, as already stated, adjudged liability against the Southern Brass & Iron Company for the net amount realized by the latter company from its sale of the lumber in Knoxville, upon the ground that at the time of its purchase from the Chilhowee Lumber company the lumber had not been delivered to it by the Youmans Company.

Now it is insisted on behalf of the Youmans Company that the Southern Brass & Iron Company should also be held liable for the 6,000 feet of lumber washed away by the floods, for the reason that at the time of said loss the legal title to the 6,000 feet was vested in the Southern Brass & Iron Company under its purchase from the Chilhowee Company. This contention is based upon the theory that, although the Youmans Company exercised its right of stoppage *in transitu,* the sale was not thereby rescinded, but the title to the lumber remained in the Chilhowee Lumber Company under the original purchase, and therefore the legal title to the 6,000 feet of lumber passed from the Chilhowee Company to the Southern Brass & Iron Company under its contract of purchase.

We are unable to concur with counsel in this contention. It is very plain to us that the Chilhowee Company could not communicate a title to the Southern Brass & Iron Company to the lumber in question, for the reason that said lumber had never been legally delivered

by the Youmans Company to the Chilhowee Company; and it is very clear that until the Chilhowee Company had the right of possession it could not communicate a title to any purchaser. The full scope and meaning of the doctrine announced by Mr. Mechem in his text, and other authorities cited, where the same principle is affirmed, is that the seller is not to be prejudiced by the exercise of his right of stoppage *in transitu,* but may enforce his contract of sale against the purchaser. Until the seller has relinquished his right of possession to the purchaser, the latter cannot, of course, communicate any title to the property so as to defeat the seller's lien.

We are therefore of opinion that the Southern Brass & Iron Company cannot be held liable for the loss of the 6,000 feet of lumber washed away by high water, upon the theory that it owned the legal title to the lumber. We are further of opinion that, since the Southern Brass & Iron Company exercised no acts of ownership over this 6,000 feet, and did not remove it, but left it standing where it was originally deposited by the Youmans Company, it cannot be held liable as for a conversion. Moreover, it appears from the finding of the court of chancery appeals that the Southern Brass & Iron Company was enjoined, at the instance of the receiver of the Chilhowee Company, against removing that lumber, or exercising any acts of ownership over it, at the very time the lumber was swept away.

The decree of the court of chancery appeals will be modified as herein indicated and affirmed.